JEFFREY S. BOSLEY (CA State Bar No. 167629)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email:      jeffbosley@dwt.com

SPENCER S. PERSSON (CA State Bar No. 235054)
ANDREW G. ROW (CA State Bar No. 319994)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899
Email:      spencerpersson@dwt.com
            andrewrow@dwt.com

Attorneys for Defendants
SEQUOIA BENEFITS & INSURANCE SERVICES, LLC
DBA SEQUOIA CONSULTING GROUP and SEQUOIA ONE PEO, LLC

DAVID M. LIU (CA State Bar No. 216311)
FREEMAN MATHIS & GARY, LLP
3030 Old Ranch Parkway, Suite 200
Seal Beach, California 90740
Telephone:  (562) 583-2126
Facsimile:  (424) 350-3842
Email:      david.liu@fmglaw.com
            zmoura@fmglaw.com

Attorneys for Defendant SEQUOIA ONE PEO, LLC

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re: Sequoia Benefits and Insurance Data Breach Litigation* | Case No. 3:22-cv-08217-AMO |
| | Assigned to the Hon. Araceli Martinez-Olguín |
| | **DEFENDANTS SEQUOIA BENEFITS & INSURANCE SERVICES, LLC, AND SEQUOIA ONE PEO, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT PURSUANT** |

DAVIS WRIGHT TREMAINE LLP

Case No. 3:22-cv-08217-AMO

MOTION TO DISMISS

**TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

*[Request for Judicial Notice; Declaration of Andrew G. Row; and Proposed Order filed concurrently]*

Date:        August 31, 2023
Time:        2:00 p.m.
Location:    Courtroom 10

Amended Consolidated Complaint Filed: April 26, 2023.

Trial Date:  Not Set

DAVIS WRIGHT TREMAINE LLP

Case No. 3:22-cv-08217-AMO

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 31, 2023, at 2:00 p.m., in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants SEQUOIA BENEFITS & INSURANCE SERVICES, LLC, DBA SEQUOIA CONSULTING GROUP and SEQUOIA ONE PEO, LLC ("Defendants") will and hereby do move for an order granting Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing, and Rule 12(b)(6) for failure to state claims for relief.  Specifically, Defendant seeks to:

1.    Dismiss the entire Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), as no named Plaintiff has Article III standing; and

2.    Dismiss all causes of action one through nine for failure to state a claim pursuant to Rule 12(b)(6) for the following reasons:

   a.    Plaintiffs' negligence claims (Counts I and II) fail because (1) the economic loss rule bars the claims; (2) Plaintiffs have not plausibly alleged that Sequoia breached any duty of care; and (3) Plaintiffs' negligence per se claim is not cognizable.

   b.    Plaintiffs' claim for breach of contract (Count III) fails because (1) Plaintiffs have not plausibly alleged the existence of any contractual agreement between them and Sequoia; and (2) Plaintiffs have not plausibly alleged breach.

   c.    Plaintiffs' invasion of privacy claim (Count IV) fails as Plaintiffs have not plausibly alleged a serious invasion of any privacy interest as a result of the data breach.

   d.    Plaintiff Zarina Abardo's claim for violation of Section 349 of the New York General Business Law (Count V) fails because (1) she is subject to a mandatory arbitration agreement, and no other named Plaintiff has standing to bring the claim; (2) none of the alleged deceptive conduct occurred in

MOTION TO DISMISS

New York; and (3) the Complaint otherwise fails to plead the necessary elements of a Section 349 claim.

e.  Plaintiffs' California Consumer Privacy Act ("CCPA") claim (Count VI) fails because (1) Plaintiffs have not plausibly alleged that Sequoia is a "business" as defined by the CCPA, as opposed to a "service provider;" (2) Plaintiffs have not plausibly alleged that Sequoia failed to implement and maintain reasonable security procedures and practices; and (3) Plaintiffs have not plausibly alleged that Sequoia has failed to cure its alleged violations of the CCPA.

f.  Plaintiffs' California Consumer Records Act ("CRA") claim (Count VIII) fails because (1) Plaintiffs have not plausibly alleged that they are "customers;" (2) the Complaint contains no alleged facts that Sequoia did not implement reasonable security protocols; and (3) Plaintiffs have not alleged they suffered an injury.

g.  Plaintiffs' Unfair Competition Law ("UCL") claim (Count VII) fails because (1) Plaintiffs lack standing under the UCL; and (2) Plaintiffs do not plausibly allege a claim under any of the three prongs of the UCL (unlawful, fraudulent, and unfair).

h.  Plaintiffs' unjust enrichment claim (Count IX) fails because (1) according to Plaintiffs' allegations, a contract encompasses the same subject matter; and (2) Plaintiffs have not conferred a benefit on Sequoia that it inequitably retained.

These Motions are based on the Notice of Motion, the attached Memorandum of Points and Authorities, all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on such other argument as may be heard by this Court.

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the entire Complaint should be dismissed pursuant to Federal Rule of Procedure 12(b)(1) because none of the named Plaintiffs have Article III standing to pursue their claims; and

2. Whether Plaintiffs have sufficiently pled all nine claims or otherwise have stated a claim upon which relief can be granted.

DATED: June 16, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

_s/ Jeffrey S. Bosley_
JEFFREY S. BOSLEY
SPENCER S. PERSSON
ANDREW G. ROW

Attorneys for Defendants
SEQUOIA BENEFITS & INSURANCE
SERVICES, LLC DBA SEQUOIA
CONSULTING GROUP and SEQUOIA ONE
PEO, LLC

FREEMAN MATHIS & GARY, LLP
DAVID M. LIU

Attorneys for Defendant
SEQUOIA ONE PEO, LLC

MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................. 3

    A.   The Data Breach. ................................................................................................ 3

    B.   The Litigation. ................................................................................................... 3

    C.   The Named Plaintiffs' Alleged Injuries. ........................................................... 4

III. ARGUMENT .................................................................................................................. 5

    A.   PLAINTIFFS LACK STANDING TO PURSUE THIS MATTER. ....................... 5

        1.   None of the Named Plaintiffs Who Are Permitted To Pursue Their Claims in This Forum Have Suffered an Injury-In-Fact. ........................... 6

        2.   Plaintiffs' Alleged Injuries Are Not Traceable to Sequoia. ........................ 8

        3.   Injunctive Relief Is Unwarranted. ............................................................. 10

    B.   THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM. ......................................................................................................... 11

        1.   Plaintiffs' Negligence Claims Fail (Counts I and II). .............................. 11

            a.   The Economic Loss Rule Bars Plaintiffs' Claims. ......................... 12

            b.   Plaintiffs Fail To Allege Sequoia Breached a Standard of Care. ................................................................................................ 13

            c.   Plaintiffs' Negligence Per Se Claim Is Not Cognizable. ............... 15

        2.   Plaintiffs' Breach of Contract Claim Fails (Count III). ............................. 16

        3.   Plaintiffs' Invasion of Privacy Claim Fails (Count IV). ........................... 17

        4.   Plaintiffs' New York General Business Law Claim Fails (Count V). ...................................................................................................... 17

        5.   Plaintiffs' California Consumer Privacy Act Claim Fails (Count VI). ..................................................................................................... 19

        6.   Plaintiffs' California Customer Records Act Claim Fails (Count VIII) ................................................................................................... 21

        7.   Plaintiffs' California Unfair Competition Law Claim Fails (Count VII) .................................................................................................... 22

            a.   Plaintiffs Lack Statutory Standing Under the UCL. ...................... 22

            b.   Plaintiffs Fail To State a Claim Under Any UCL Prong. ............... 23

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS

8.     Plaintiffs' Unjust Enrichment Claim Fails (Count IX). ............................25

IV.     CONCLUSION ...................................................................................................25

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
19 N.Y.S. 3d 850 (2015) ................................................................................................ 18, 19

*Ables v. Brooks Brothers Grp., Inc.*,
2018 WL 8806667 (C.D. Cal. June 7, 2018)................................................................................ 7

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
2018 WL 2084168 (S.D.N.Y. May 1, 2018)............................................................................. 18

*Anderson v. Kimpton Hotel & Rest. Group, LLC*,
2019 WL 3753308 (N.D. Cal. Aug. 8, 2019)...................................................................... 9, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 11, 14

*Baba v. Hewlett-Packard Co.*,
2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ............................................................................ 24

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)...................................................................................................... 11

*Barnum Timber Co. v. EPA*,
633 F.3d 894 (9th Cir. 2011)........................................................................................................ 5

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
685 F. Supp. 2d 1094 (E.D. Cal. 2010)...................................................................................... 24

*Brett v. Brooks Bros. Grp., Inc.*,
2018 WL 8806668 (C.D. Cal. Sep. 6, 2018)................................................................................ 7

*C.C. v. Med-Data Inc.*,
2022 WL 970862 (D. Kan. Mar. 31, 2022)................................................................................. 7

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010)..................................................................................................... 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .................................................................................................................... 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................................................................... 7

*Cook v. Brewer*,
637 F.3d 1002 (9th Cir. 2011).................................................................................................... 11

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

*Cooper v. Bonobos, Inc.*,
   2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) .............................................................................. 10

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ................................................................................................... 11

*Corona v. Sony Pictures Ent., Inc.*,
   2015 WL 3916744 (C.D. Cal. June 15, 2015) ......................................................................... 21

*Cottrell v. Sequoia Benefits and Insurance Services LLC*,
   No. 3:22-cv-08978-WHO ..................................................................................................... 3, 6

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................................................................................. 24

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ....................................................... 10, 12, 13, 22

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ..................................................................................... 25

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ................................................................................... 24

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
   2016 WL 8578096 (D. Colo. June 20, 2016) ............................................................................ 8

*Gardiner v. Walmart Inc. (Gardiner I)*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ..................................................................... 12, 23

*Gardiner v. Walmart, Inc. (Gardiner II)*,
   2021 WL 4992539 (N.D. Cal. July 28, 2021) ..................................................................... 8, 13

*GECCMC 2005–C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*,
   671 F.3d 1027 (9th Cir. 2012) ................................................................................................. 16

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) ................................................................................... 14, 20

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................................... 25

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................... 25

*Hartless v. Clorox Co.*,
   2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ........................................................................... 24

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009) .................................................................................................. 25

MOTION TO DISMISS

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) .......................................................................................................... 17

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ........................................................................................ 22

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .......................................................................................... 24

*Horowitz v. Stryker Corp.*,
    613 F. Supp. 2d 271 (E.D.N.Y. 2009) ............................................................................ 18

*Huynh v. Quora, Inc.*,
    2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .............................................................. 22

*In re Brinker Data Incident Litig.*,
    2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .................................................................. 17

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) .......................................................................... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .......................................................................................... 16

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd in relevant part, rev'd in part*,
    572 F. App'x 494 (9th Cir. 2014) ................................................................................... 22

*In re iPhone Application Litig. (iPhone Application Litig. II)*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ............................................................................. 23

*In re iPhone Application Litig. (iPhone Application Litig. I)*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................... 17

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ................................................................................... 10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................................ 12

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ................................................................................... 25

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ................................................................... 21

*In re Yahoo! Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................ 23

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......................................................................... 13

DAVIS WRIGHT TREMAINE LLP

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

*In the Black Res., LLC v. Blitz Design, Inc.*,
  2022 WL 17082372 (N.D. Cal. Nov. 17, 2022).......................................................................25

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979)........................................................................................................ 12, 13

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020).......................................................................15

*Jasso v. Citizens Telecomms. Co. of Cal.*,
  2007 WL 97036 (E.D. Cal. Jan. 9, 2007)...............................................................................13

*JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*,
  38 N.Y.S.3d 658 (2016) .........................................................................................................19

*Karter v. Epiq Sys., Inc.*,
  2021 WL 4353275 (C.D. Cal. Apr. 19, 2021).........................................................................20

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
  2022 WL 16894503 (C.D. Cal. July 29, 2022) ......................................................................21

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017)..................................................................................................14

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011)............................................................................................................22

*Legg v. Leaders Life Ins. Co.*,
  574 F. Supp. 3d 985 (W.D. Okla. 2021) ..................................................................................7

*Leonard v. McMenamins, Inc.*,
  2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ....................................................................10

*Lobstein v. Wa. Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OCl*,
  2020 WL 3964788 (C.D. Cal. June 8, 2020)..........................................................................16

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................................17

*Maag v. U.S. Bank, Nat'l Ass'n*,
  2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) .................................................................... 14, 20

*Maxwell v. Unilever United States, Inc.*,
  2014 WL 4275712 (N.D. Cal. Aug. 28, 2014)........................................................................23

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020).................................................................................................23

*New York. Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (Ct. App. 2002)...............................................................................................18

MOTION TO DISMISS

*Ngo v. BMW of N. Am., LLC*,
  23 F.4th 942 (9th Cir. 2022) ................................................................................................ 16

*North Star Int'l v. Ariz. Corp. Comm'n*,
  720 F.2d 578 (9th Cir. 1983) ............................................................................................... 11

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ........................................................................................................ 5, 10

*Pica v. Delta Airlines, Inc. (Gardiner I)*,
  2018 WL 5861362 (C.D. Cal. Sep. 18, 2018) ........................................................... 13, 14, 15

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ........................................................................................ 12

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ................................................................. 14, 22

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ............................................................................................. 9

*S. California Gas Leak Cases*,
  7 Cal. 5th 391 (2019) .......................................................................................................... 12

*Schmitt v. SN Servicing Corp. (Schmitt I)*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................................................................. 17, 23

*Schmitt v. SN Servicing Corp (Schmitt II)*,
  2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ...................................................................... 24

*Sheen v. Wells Fargo Bank, N.A.*,
  12 Cal. 5th 905 (2022) ........................................................................................................ 12

*Shostack v. Diller*,
  2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) ..................................................................... 19

*Smith v. Sabre Corp.*,
  2017 WL 11678765 (C.D. Cal. Oct. 23, 2017) ................................................................. 7, 15

*Spokeo v. Robins*,
  578 U.S. 330 (2016) .......................................................................................................... 5, 8

*Sponchiado v. Apple Inc.*,
  2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ..................................................................... 17

*Springmeyer v. Marriott Int'l, Inc.*,
  2021 WL 809894 (D. Md. March 3, 2021) ............................................................................ 8

*Stanford v. Home Depot USA, Inc.*,
  358 F. App'x 816 (9th Cir. 2009) ........................................................................................ 11

DAVIS WRIGHT TREMAINE LLP

vii   Case No. 3:22-cv-08217-AMO
MOTION TO DISMISS

*Stollenwerk v. Tri-West Health Care All.*,
   254 F. App'x 664 (9th Cir. 2007)..................................................................................... 9

*Stutman v. Chem. Bank*,
   95 N.Y. 2d 24 (Ct. App. 2000) ....................................................................................... 18

*Sutter Health v. Super. Ct.*,
   227 Cal. App. 4th 1546 (2014)....................................................................................... 17

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................. 5, 7

*Turk v. Rubbermaid Inc.*,
   2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ................................................................. 19

*Updike v. Multnomah Cnty.*,
   870 F.3d 939 (9th Cir. 2017).......................................................................................... 11

*Warth v. Seldin*,
   422 U.S. 490 (1975) ......................................................................................................... 5

*Webb v. Injured Workers Pharmacy, LLC*,
   2022 WL 10483751 (D. Mass. Oct. 17, 2022) ............................................................... 7

*Whalen v. Michael Stores Inc.*,
   153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) ......................... 7

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................................................ 8

**Statutes**

California Business and Professions Code § 17204................................................................... 22

California Civil Code
   § 1798(a)(1)..................................................................................................................... 21
   § 1798(b) .......................................................................................................................... 21
   § 1798.84(b) ............................................................................................................... 21, 22
   § 1798.140(ag) ................................................................................................................. 20
   § 1798.140(d)(1)............................................................................................................... 20
   § 1798.150(a) ................................................................................................................... 20
   § 1798.150(a)(1)............................................................................................................... 19
   § 1798.150(b) ................................................................................................................... 19

California Consumer Privacy Act ...................................................................................... *passim*

California Customer Records Act .................................................................................. 21, 22, 23, 24

California Unfair Competition Law ........................................................................................ 22

Federal Trade Commission Act................................................................................................ *passim*

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

New York General Business Law
    § 349 ................................................................................................................ 17, 18, 19
    § 899-aa ................................................................................................................. 19

**Rules**

Federal Rule of Civil Procedure
    9(b) .................................................................................................................... 24
    12(b)(1)............................................................................................................. 2, 5
    12(b)(6)........................................................................................................ 3, 11, 14

**Constitutional Provisions**

U.S. Constitution Article III ................................................................................*passim*

DAVIS WRIGHT TREMAINE LLP

## I.     INTRODUCTION

Even when employing rigorous security measures, a business can still fall victim to a data breach as cybercriminals incessantly probe secured systems in an attempt to gain access to information.  Underscoring the consistent presence of this threat, in 2021, 1,862 data breaches occurred, resulting in over 293 million sensitive records being exposed.  (ECF No. 47 ("Compl.") ¶ 47.)  In late-2022, despite implementing industry-leading security measures and practices, Defendants Sequoia Benefits & Insurance Services, LLC ("Sequoia Consulting") and Sequoia One PEO, LLC ("Sequoia One") (collectively, "Sequoia") were the victims of a cyberattack.  In response, Sequoia gave timely notice to potentially affected individuals that cybercriminals allegedly accessed certain Sequoia systems containing certain categories of personal identifying information ("PII").  Almost immediately after this notice was sent—and without so much as waiting to see if Sequoia's breach impacted Plaintiffs—Plaintiffs and their counsel filed this action seeking unwarranted class-wide relief.

Sequoia Consulting is a benefits broker and consulting firm that advises employers regarding benefits, retirement plan options, and other programs to offer to their employees and dependents.  Sequoia One is a separately incorporated, affiliated entity which offers Professional Employer Organization, or "PEO" services, including human resources support to employers who desire to contract for these resources from Sequoia One.  Individuals who are on-boarded with a client employer through Sequoia One, or who use services elected by a client employer after consulting guidance provided by Sequoia, provide certain information to Sequoia in connection with those benefits and services.

Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") should be dismissed for several reasons.  First, this is a lawsuit in search of an injury—Plaintiffs do not have standing to pursue their claims because they have not alleged any injury-in-fact.  Plaintiffs have provided no facts, beyond rank speculation, that their so-called injuries are connected to Sequoia and the data breach.  As an example, certain named Plaintiffs allege unauthorized credit card charges, bank withdrawals, and spam calls, *despite credit card information, bank information, and telephone numbers not being part of the data breach*.  Because Plaintiffs can allege no injury-in-

1                                         Case No. 3:22-cv-08217-AMO

MOTION TO DISMISS

fact that can be plausibly traced to Sequoia's data breach, the Complaint resorts to conclusory allegations that: (i) Plaintiffs are at an "increased risk of" identity theft; (ii) they have expended and will continue to expend time and effort to mitigate the hypothetical risk of future identity theft; and (iii) the value of Plaintiff's PII has somehow diminished.  Not one of these allegations constitutes a present, actionable injury-in-fact or an injury that is fairly traceable to the data breach necessary to confer Article III standing.  This action, therefore, should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1)[1].  Plaintiffs' lack of standing can be summarized as follows:

| Plaintiff(s) | No Injury-in-Fact | Alleges Harms Beyond Fears of Future Injury, Lost Time, and Diminished Value of PII | Alleges Injuries Not Causally Tied To Sequoia's Data Breach. |
|---|---|---|---|
| Abardo; A. Mitra; A.J.; Carter; Cottrell; E.G.; Enger; McGurk; Mindeguia; and S.G. | ✓ | | ✓ |
| S. Mitra | ✓ | ✓ (unsuccessful attempts to open credit card and bank account) | ✓ |
| Guagenti | ✓ | ✓ (unauthorized charge on credit card and spam communications) | ✓ (credit card information and cell phone numbers not exposed) |
| Jiao and Pan | ✓ | ✓ (spam communications) | ✓ (phone numbers not exposed) |
| Jones | ✓ | ✓ (unauthorized withdrawal from bank account and unauthorized charge) | ✓ (bank account and credit card information not exposed) |

Even if Plaintiffs could clear the standing threshold (which they cannot), this case should still be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to state a claim upon which relief may be granted.

---

[1] In addition, at least six of the named Plaintiffs are also improperly in this forum and required to arbitrate their claims on an individual basis as set forth *infra* and in the Motions to Compel concurrently filed.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

Because Plaintiffs have not established Article III standing and each one of Plaintiffs' claims otherwise fails as a matter of law, this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    The Data Breach.

In early December 2022, Sequoia sent letters to affected individuals informing them that between September 22, 2022, and October 6, 2022, an unidentified third party gained access to Sequoia's cloud storage system and *"may"* have had access to the PII of customers' employees and their family members, including names, addresses, dates of birth, gender, marital status, employment status, social security numbers, work email addresses, member ID, and wage data.[2] (Compl. ¶¶ 3–4, 41); *see also Cottrell v. Sequoia Benefits and Insurance Services LLC,* No. 3:22-cv-08978-WHO, ECF No. 1, Ex. A at 43–44 (the "Notice Letter") (Request for Judicial Notice ("RJN"), Ex. 6) ("The unauthorized party *may* have been able to access some of your personal information[.]") (emphasis added).  Upon becoming aware of the data breach, Sequoia employed the services of a leading global security firm and confirmed that, *inter alia*, no evidence of "data being used or distributed has been found to date," and no evidence of "continuing unauthorized activity in Company systems was found."  *See* Notice Letter.  Nevertheless, Sequoia offered all potentially impacted individuals a free, three-year enrollment for identity theft protection services through Experian.[3]  *Id*.

### B.    The Litigation.

Since December 12, 2022, and commencing almost immediately after Sequoia provided notice, six separate lawsuits have been filed against Sequoia and consolidated before this Court.  On March 30, 2023, the Court appointed interim class counsel and ordered Plaintiffs to file an amended consolidated complaint.  (*See* ECF No. 8 at 3.)  On April 26, 2023, Plaintiffs filed the instant Complaint, alleging nine causes of action on behalf of fifteen named individuals.  (*See*

---

[2] As the Notice Letter shows, no bank account numbers, credit card numbers, or cell phone numbers were part of the PII potentially exposed in the incident.  *See* Notice Letter.

[3] Experian's protections are outlined in the Notice Letter and include social security monitoring, internet and dark web monitoring, identity restoration in the unlikely event of identity theft, and one million dollars in identity theft insurance.  *See* Notice Letter.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

Compl. ¶¶ 12–27.)[4]

As explained in the concurrently filed Motions to Compel Arbitration, Plaintiffs Arnab Mitra, Peter Guagenti, and Zarina Abardo signed mandatory arbitration agreements with Sequoia One whereby they agreed to arbitrate any claims they may have against Sequoia One and its "affiliated . . . entities" (*i.e.*, Sequoia Consulting).

**C.    The Named Plaintiffs' Alleged Injuries.**

The Complaint devotes considerable space to describing the fallout generally accompanying data breaches. (*See* Compl. ¶¶ 70–86.) The injuries alleged here, however, are not consistent with the speculative parade of horribles outlined in the Complaint. The named plaintiffs here aver that their injuries consist of: (1) fear of future harm of misuse of their PII; (2) lost time in having to monitor their finances for potential identity theft; and (3) diminished value of their PII. (*See* Compl. ¶¶ 7–27.)[5] Only five of the fifteen named Plaintiffs (Shelby Mitra, Peter Guagenti, Seth Jones, Jialin Jiao, and Xuan Pan) allege any "injury" beyond these general and intangible harms. (*See* Compl. ¶¶ 10–11, 18–19, 21–22, 25–26.) Plaintiff Shelby Mitra alleges that since the data breach she has received notices that someone had unsuccessfully attempted to open a credit card and bank account in her name. (*Id.* ¶ 11.) Plaintiff Peter Guagenti alleges that in January 2023 he experienced "multiple unauthorized charges" on his credit card and that since the data breach he has experienced a "significant increase in the volume of phishing e-mails and spam calls and text messages." (*Id.* ¶ 22.) Plaintiff Seth Jones alleges that since the data breach, unauthorized third parties removed "$2,420" from his bank account and that he incurred an unauthorized "fraudulent charge of $77.85." (*Id.* ¶ 25.) By failing to allege any loss of money as a part of their UCL claim, Plaintiffs concede that Guagenti and Jones were reimbursed for fraudulent charges and bank account losses and they suffered no financial loss. (*See id.* ¶ 196.) Plaintiffs Jialin Jiao and Xuan

---

[4] Should this case proceed past the pleading stage, Plaintiffs will have to address the fact that for those named Plaintiffs and putative class members that created Sequoia accounts either through its web portal or mobile app, they agreed to terms and conditions containing a class action waiver that requires they assert their claims on a solely individual basis.

[5] The Complaint also alleges the Plaintiffs have incurred "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft." (*See* Compl. ¶ 8; *see also id.* ¶ 166.) However, the Complaint contains no factual allegations showing that any of the named Plaintiffs incurred out-of-pocket expenses, which would have been unnecessary given that Sequoia offered three years of free identity theft protection services through Experian.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Pan allege that since the data breach they have experienced a "significant increase of the volume of spam" text messages and calls, respectively. (*Id.* ¶¶ 18–19.)  As detailed *infra*, these alleged injuries are inadequate to establish standing.

### III.    ARGUMENT

### A.    PLAINTIFFS LACK STANDING TO PURSUE THIS MATTER.

A court lacks subject matter jurisdiction over a matter if a plaintiff does not have standing under Article III of the U.S. Constitution.  *See* FED. R. CIV. P. 12(b)(1); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197 (2021).  Once a party has moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the opposing party bears the burden of establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).  This requires the non-movant to demonstrate through allegations of "specific facts plausibly explaining" why the standing requirements are met.  *See Barnum Timber Co. v. EPA,* 633 F.3d 894, 899 (9th Cir. 2011).

To meet the irreducible constitutional minimum for standing under Article III of the U.S. Constitution, a plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct, and (3) which will be redressed by a favorable decision.  *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).  In a class action, the named plaintiffs "must allege and show that *they personally have been injured,* not that injury has been suffered by other, unidentified members of the class."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Each one of the Plaintiffs fails to meet the basic threshold for standing.  To summarize:

- Plaintiff Peter Guagenti is subject to binding arbitration, and therefore his injuries are irrelevant for Article III standing purposes.  Moreover, unauthorized credit card charges and increased spam calls do not constitute injuries in fact absent financial loss, and these injuries are not fairly traceable to the data breach, in any event, as credit card information and cell phone numbers were not part of the data exposed.

- Plaintiff Shelby Mitra is subject to binding arbitration, and therefore her injuries are irrelevant for Article III standing purposes.  Moreover, attempts to open bank

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

and credit card accounts do not constitute injuries-in-fact unless such attempts are either successful or the individual has suffered a financial loss as a result. Plaintiff Mitra does not allege such attempts were successful or that she has otherwise suffered a financial loss.

- Plaintiff Seth Jones's alleged injuries of withdrawn funds from his bank account and fraudulent charges do not constitute an injury-in-fact without also alleging that he has not been reimbursed for such withdrawals and charges. Further, these "injuries" are not traceable to the breach as bank account and credit card information were not part of the data exposed.

- Plaintiffs Jialin Jiao and Xuan Pan's alleged injuries of an increase in spam calls and texts are not fairly traceable to the breach because phone data was not exposed.

- Binding precedent shows that the other injuries alleged by the other ten named Plaintiffs do not constitute injuries-in-fact or are fairly traceable to any conduct of Sequoia.

**1.      None of the Named Plaintiffs Who Are Permitted To Pursue Their Claims in This Forum Have Suffered an Injury-In-Fact.**

As set forth in the above summary, only five of the fifteen named Plaintiffs (Shelby Mitra, Peter Guagenti, Seth Jones, Jialin Jao, and Xuan Pan) allege any "injury" beyond conclusory allegations of speculative fears of future harm, lost time, and diminution of value of their PII. (*See* Compl. ¶¶ 10–11, 18–19, 21–22, 25–26.) However, in each case, the alleged injury involved credit cards, bank accounts, and cell phone spam calls. No data that could cause such "injury" was implicated in the data breach (as evidenced by Sequoia's Notice Letter), and Plaintiffs provide no plausible factual allegations showing how the types of PII involved in the data breach could have led to these alleged injuries. Furthermore, even if unauthorized credit card charges, unauthorized bank withdrawals, unsuccessful attempts to open bank or credit card accounts, and unwanted cell phone calls could be traced to the breach, these do not constitute injuries-in-fact because Plaintiffs fail to allege that they have lost any money as a result of those incidents (*i.e.*, that they were not reimbursed for withdrawn funds or for any unauthorizes charges). *See Smith v. Sabre Corp.*, 2017

MOTION TO DISMISS

WL 11678765 at *3 (C.D. Cal. Oct. 23, 2017) (explaining that where a plaintiff "does not allege that [he] incurred any monetary loss from the fraudulent charges themselves[,]" the plaintiff "cannot assert an injury attributable to the alleged fraudulent charges"); *Brett v. Brooks Bros. Grp., Inc.*, 2018 WL 8806668, at *2-3, 6–7 (C.D. Cal. Sep. 6, 2018) (same); *Ables v. Brooks Brothers Grp., Inc.*, 2018 WL 8806667, at *5–7 (C.D. Cal. June 7, 2018) (same); *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580 (E.D.N.Y. 2015) (same), *aff'd*, 689 F. App'x 89 (2d Cir. 2017). Indeed, Plaintiffs' failure to allege loss of money under their UCL claim shows that Plaintiffs *were* reimbursed for any purported fraudulent charges or bank account losses. (*See* Compl. ¶ 196.)

With regards to the remaining Plaintiffs, the fear of future harm, lost time, and diminished value of PII also fails to confer Article III standing.

**Fear of Future Harm Not Sufficient to Confer Standing.** Plaintiffs' speculative fears of future harm (*i.e.*, identity theft) do not confer Article III standing. After *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), courts have made clear that a plaintiff's allegations of an increased risk of identity theft in the future does not constitute an injury-in-fact. *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 2022 WL 10483751, at *2 (D. Mass. Oct. 17, 2022); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 993 (W.D. Okla. 2021); *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *7 (D. Kan. Mar. 31, 2022). Not until the risk of harm has "materialized" will Plaintiffs have suffered an injury-in-fact. *TransUnion LLC*, 141 S. Ct. at 2211.

**Lost Time Not Sufficient to Confer Standing.** As the Supreme Court made clear in *Clapper v. Amnesty Int'l USA*, a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." 568 U.S. 398, 409, 416 (2013); *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, 2016 WL 8578096, at *6–7 (D. Colo. June 20, 2016) (finding no standing where plaintiff identified no repercussions "other than his own remedial efforts"). The inadequacy of the lost time allegations is particularly apparent here, where the Complaint shows that Plaintiffs learned of the breach through Sequoia's notice (*see* Compl. ¶¶ 9–27), and that same notice offered Plaintiffs three years of free identity theft services through Experian. Any purported lost time could have been avoided by opting into coverage.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

**Diminished Value of PII Not Sufficient to Confer Standing.** Plaintiffs' allegations of diminished value of their PII does not constitute an injury-in-fact. Plaintiffs fail to articulate how their PII lost value or that there is a defined market for their information that they intended to take advantage of through a sale. Absent such allegations, courts across the country—including in this Circuit—have consistently held this theory of injury does not constitute an injury-in-fact. *See, e.g.*, *Gardiner v. Walmart, Inc. (Gardiner II)*, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (dismissing claim where plaintiff failed to "allege that he has been unable to sell, profit from, or monetize his personal information" as a result of the defendant's negligence); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *3–4 (N.D. Cal. Mar. 26, 2013) (plaintiffs failed to allege facts sufficient to show injury-in-fact based on diminution in value of their personal information) (collecting cases).

### 2.     Plaintiffs' Alleged Injuries Are Not Traceable to Sequoia.

Plaintiffs' lack Article III standing to pursue their claims as they have alleged *zero* facts that the injuries they complain of are "fairly traceable" to the conduct of Sequoia, rather than some independent third party (*i.e.*, the unidentified cybercriminals), an unrelated breach, or their own disclosure. *See Spokeo*, 578 U.S. at 338; *Springmeyer v. Marriott Int'l, Inc.*, 2021 WL 809894, at *2 (D. Md. March 3, 2021). Plaintiffs challenge Sequoia's failure to "properly implement basic security practices" and to "employ reasonable and appropriate [security] measures[.]" (Compl. ¶¶ 60–61.) However, to establish traceability for Article III standing purposes in the data breach context, a plaintiff must allege more than "conclusory allegations" that the breach was the result of the defendant's failure to implement adequate cybersecurity measures. *Springmeyer*, 2021 WL 809894, at *3; *Anderson v. Kimpton Hotel & Rest. Group, LLC*, 2019 WL 3753308, at *4 (N.D. Cal. Aug. 8, 2019) (no standing in data breach case where plaintiffs did not allege "any . . . action Kimpton failed to take"). As discussed *infra* in Part III.B.1.b, Plaintiffs fail to allege any facts that Sequoia failed to take such measures and, thus, that there is any causal connection between Sequoia's alleged actions and the harms Plaintiffs claim to have suffered. This failure alone defeats Article III standing and requires dismissal of the entire Complaint.

MOTION TO DISMISS

Moreover, and as explained *supra*, the injuries of Plaintiffs Shelby Mitra and Peter Guagenti are irrelevant for Article III standing purposes as they cannot proceed in this forum. But even if they could, their allegations of injury (and those of Plaintiffs Jones, Jiao, and Pan) do not constitute injuries-in-fact because they are not fairly traceable to Sequoia.

**Plaintiff Shelby Mitra**. Plaintiff Shelby Mitra claims that someone attempted to open a Bank of America credit card and checking account in her name. (*See* Compl. ¶ 10.) However, she fails to allege any facts making it plausible that such attempts can be "fairly trace[d]" to Sequoia's data breach. A plaintiff claiming injury from a data breach must plead a "logical connection between the two incidents[,]" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326–27 (11th Cir. 2012), and "*purely temporal* connections are often insufficient . . . ." *Stollenwerk v. Tri-West Health Care All.*, 254 F. App'x 664, 668 (9th Cir. 2007). By way of example, Mitra fails to allege that the Sequoia data breach is the only incident where her PII has been exposed or that she never suffered any instances of identity fraud (or attempted identity fraud) prior to the Sequoia data breach. *Cf. Stollenwerk*, 254 F. App'x at 668 (taking into account that the plaintiff had not suffered any incidents of identity theft prior to the theft of the defendant's hard drives). Indeed, Plaintiffs concede that data breaches are ubiquitous. (*See* Compl. ¶ 47.) Plaintiffs cannot on the one hand allege that data breaches have become commonplace, but on the other hand that Mitra's injury is necessarily traceable to Sequoia.

**Plaintiff Peter Guagenti**. Plaintiff Guagenti claims to have incurred a number of unauthorized charges on his credit card and "experienced a significant increase in the volume of phishing e-mails and spam calls and text messages." (*See* Compl. ¶ 22.) With respect to the unauthorized credit card charges, there is no allegation in the Complaint that credit card or banking information was accessed or stolen during the data incident, and the breach Notice Letter shows that this type of information was not exposed. *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31 (D.D.C. 2014) (finding lack of causation between data breach and fraudulent charges where plaintiff failed to allege that "credit-card, debit-card, or bank account information" was stolen); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *3 (W.D. Wash. Sept. 2, 2022) (same). With respect to the phishing emails and spam calls and texts,

MOTION TO DISMISS

the Complaint fails to allege phone numbers were exposed in the data breach—again, the breach notification letter undermines any such allegation—and thus there is no plausible traceability between the spam calls and texts and the data breach. *See id.* In any event, phishing and spam emails, calls, and texts are so pervasive that they cannot be fairly traceable to the breach. *See e.g.*, *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at \*5 (S.D.N.Y. Jan. 19, 2022) (finding plaintiff had failed to allege that "spam texts, calls, and emails [were] 'fairly traceable'" to defendant's actions).

**Plaintiff Seth Jones.** Plaintiff Jones claims that money was taken from his bank account and that he experienced a fraudulent charge. (*See* Compl. ¶ 22.) As with Plaintiff Guagenti, these alleged injuries cannot be plausibly traced to Sequoia's data breach because there is no allegation that Plaintiff Jones's banking or credit card information was accessed during the data breach.

**Plaintiffs Jialin Jiao and Xuan Pan.** Plaintiffs Jiao and Pan allege that they have experienced a significant increase in spam text messages and calls which, again, are not fairly traceable to the data breach as phone numbers were not exposed. (*See* Compl. ¶¶ 18–19.)

### 3.    Injunctive Relief Is Unwarranted.

Plaintiffs also lack Article III standing to seek injunctive relief as they have not alleged any "real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496. Plaintiffs allege, without averring any facts, that they remain at a "continued risk" as their PII "remain[s] in Defendants' possession and is subject to further unauthorized disclosures." (Compl. ¶ 219.). Plaintiffs, however, allege no facts suggesting that there is an ongoing security deficiency that creates any real and immediate threat of a further data breach. *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at \*8 (S.D. Cal. Nov. 3, 2016) (no standing for injunctive relief for a fear of "on-going data breaches"). Indeed, the Ninth Circuit has made patently clear "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *see also Updike v. Multnomah Cnty.*, 870 F.3d 939, 948 (9th Cir. 2017) ("[P]laintiff's past injury is insufficient to establish that the risk of recurring injury is more than speculative.").

\* \* \* \* \*

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

As a result, no named Plaintiff has Article III standing to maintain the suit. Because the named Plaintiffs lack Article III standing, they also lack standing to amend their pleadings to name another putative class member in an attempt to cure this jurisdictional defect. *See, e.g.*, *Stanford v. Home Depot USA, Inc.*, 358 F. App'x 816, 819 (9th Cir. 2009) ("[S]ince plaintiff had no live claim and therefore no standing when the case was first brought, this is not a situation in which the case can continue with a putative class member substituted as the named plaintiff.").

**B.    THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM.**

If the Court finds that one or more of the named Plaintiffs has Article III standing, it should, nonetheless, dismiss the Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal will also be proper if a complaint is vague, conclusory, or otherwise fails to set forth material facts in support of the allegations. *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir. 1983). While the court must accept as true all factual allegations, it may not credit any "conclusory statements" or "[t]hreadbare recitals of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1.    Plaintiffs' Negligence Claims Fail (Counts I and II).

To state a claim for negligence under California law, a plaintiff must allege that: (1) the defendant had an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) the defendant "fail[ed] to conform to that standard (breach of the duty)", (3) there is "a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause)," and (4) "actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (citation omitted). Plaintiffs' negligence claims fail for three reasons: (1) the claims are barred by California's economic loss rule as Sequoia had no duty to protect against such losses; (2) Plaintiffs fail to plausibly allege that Sequoia breached any duty of care; and (3) California law does not recognize Plaintiffs' negligence *per se* claim.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

### a.    The Economic Loss Rule Bars Plaintiffs' Claims.

While Plaintiffs claim Sequoia had a "common law" duty to protect their PII (*see* Compl. ¶ 108), no California state court has found there is a common-law duty to safeguard personal data from a third-party criminal attack, and the California Supreme Court has expressly rejected creating a duty to guard against "purely economic losses." *S. California Gas Leak Cases*, 7 Cal. 5th 391, 398 (2019) (no duty for a gas company to guard against purely economic losses of businesses affected by a gas leak).  In so holding, the California Supreme Court stated that the imposition of a duty to protect against pure economic losses is the "exception, not the rule." *Id.* at 400.

This economic loss rule bars Plaintiffs' negligence claims because they do not allege any physical harm (*i.e.*, personal injury or property damage). *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022).  Plaintiffs' conclusory allegations about lost time, diminished value of their PII, and emotional injuries do not suffice to avoid the economic loss rule because, as the Ninth Circuit has recognized, such types of harm are not cognizable damages in negligence claims. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614–15 (9th Cir. 2021); *see also Dugas*, 2016 WL 6523428, at *12 (holding data breach plaintiff's negligence claim was barred by the economic loss rule as he alleged "no personal injury or physical damage to his property"). Because the imposition of a duty for economic loss is the exception, not the rule, in the absence of physical harm a special relationship must exist between the parties to recover purely economic losses. *See S. Cal. Gas Leak Cases,* 7 Cal. 5th at 400; *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803–04 (1979).

In the context of data breach suits, a number of courts have refused to find that a special relationship exists between parties. *See e.g., In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014); *Gardiner v. Walmart Inc. (Gardiner I)*, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021); *Dugas*, 2016 WL 6523428, at *12.  For a special relationship to exist, Plaintiffs would need to allege that a transaction with Sequoia "was intended to specifically benefit [them] in a way separate from other customers." *Gardiner II*, 2021 WL 4992539, at *6.  Holding Sequoia liable for economic losses would also not further a "policy

MOTION TO DISMISS

of preventing future harm," *J'Aire Corp.*, 24 Cal. 3d at 805, because Sequoia already has strong "incentives to maintain its reputation and relationship" with its clients (Plaintiffs' employers) by safeguarding PII. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1039 (N.D. Cal. 2021) (negligence claim in suit that alleged defendants improperly shared PII with third parties barred by economic loss rule) (citation omitted). Plaintiffs' negligence claims should, therefore, be dismissed as they are barred by the economic loss rule.

### b. Plaintiffs Fail To Allege Sequoia Breached a Standard of Care.

In order to properly plead a breach of duty, a plaintiff must allege sufficient facts to establish the applicable standard of care and *how* the defendant breached that standard of care. "The bald allegation that defendants owed plaintiffs a duty, and breached that duty does not satisfy plaintiffs' burden of stating a claim." *Jasso v. Citizens Telecomms. Co. of Cal.*, 2007 WL 97036, at *5 (E.D. Cal. Jan. 9, 2007). Instead, "plaintiffs must be clear on the relevant standard of care applicable . . . the source of that standard, and *what factual allegations* show that the duty was breached." *Id.* (emphasis added).

Plaintiffs fail to supply *any* factual allegations showing that Sequoia breached its duty to Plaintiffs. Instead, Plaintiffs' entire approach is to do what *Jasso* prohibits: they speculate that because of the data breach, Sequoia *must not have* employed reasonable security procedures. (*See* Compl. ¶ 52 ("The occurrence of the Data Breach *indicates* that Defendants failed to adequately implement reasonable and adequate information security controls[.]") (emphasis added).) Then Plaintiffs go on to baldly assert that Sequoia failed to comply with undefined industry standards or Federal Trade Commission Act ("FTC Act") guidelines. (*See* Compl. ¶¶ 50–69.) The FTC Act, however, cannot provide the substitute duty of care required for Plaintiffs to maintain a negligence or negligence *per se* claim because that statute does not provide a private right of action, and Congress intended it to be exclusively enforced by administrative agencies. *See Pica v. Delta Airlines, Inc. (Gardiner I)*, 2018 WL 5861362, at *9 (C.D. Cal. Sep. 18, 2018). But even if Plaintiffs could establish a duty through the FTC Act or otherwise, they still have not included a single *factual allegation* demonstrating that Sequoia committed any acts or omissions that deviated from any specific standard of care. Instead, Plaintiffs resort to the hollow, threadbare allegations

MOTION TO DISMISS

that "Defendants failed to properly implement basic data security practices" (Compl. ¶ 60), failed to "employ reasonable and appropriate measures" (*id.* ¶ 61), and failed to "follow[]" industry "guidelines and industry best practices," (*id.* ¶ 69).

Plaintiffs' conclusion that the mere occurrence of a cyberattack must mean that Sequoia did not implement basic security practices is exactly the sort of tautological claim that the Supreme Court has rejected under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient) (citation omitted). It is for this reason federal courts routinely dismiss claims predicated on conclusory allegations of a defendant's failure to implement reasonable data security measures. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) ("The implied premise that because data was hacked [Defendant's] protections must have been inadequate is a 'naked assertion[ ] devoid of further factual enhancement' that cannot survive a motion to dismiss.") (quoting *Iqbal*, 556 U.S. at 678); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) (plaintiffs' complaint failed to "explain with which of the many standards listed [defendant] failed to comply" and that "[a]lleging that a [data security] system was inadequate because a negative result occurred is conclusory"); *Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing claim where plaintiff made "only . . . unsupported allegations that his PII was compromised because Defendant did not 'implement and maintain reasonable security procedures and practices,' 'failed to effectively monitor its systems for security vulnerabilities,' and had 'lax security'") (citations omitted); *Razuki v. Caliber Home Loans, Inc.,* 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing claims where plaintiff merely "recited a few buzz words with the hope that he may be able to figure out later what, if anything, [defendant] ha[d] done wrong"); *Pica*, 2018 WL 5861362, at *7 (holding plaintiff's complaint suffered from the "fatal deficienc[y]" of failing to "plead with sufficient particularly how and why Defendant's security practices and procedures are sub-standard"); *Smith*, 2017 WL 11678765, at *5 n.1 (plaintiffs pled "no facts at all regarding [defendant's] data security practices. Instead, they suggest that any time a company is the victim of theft by a third-party criminal, security deficiencies should be implied. The law is to the

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

contrary[.]"). This Court should follow suit and reject Plaintiffs' simplistic assertions unsupported by factual allegations.

Indeed, Sequoia's letters in response to Plaintiffs' CCPA notices demonstrate that Sequoia undertakes industry-leading security measures to protect PII. *See* RJN, Exs. 1–5. This includes: "[u]ndertaking ongoing periodic assessments such as penetration tests and an annual SOC 2 + HITRUST audit performed by an accredited audit firm;" "[s]ecurity awareness training (company-wide training, phishing tests, secure code development training);" "[e]ndpoint security controls (full disk encryption, restriction on local admin rights, security web-proxy on network and endpoints, strong password requirements, and advanced anti-virus protections);" and "[n]etwork security controls (static and dynamic scanning, AWS security hub scanning, WAF in front of internet-facing endpoints, encryption of data at rest and in transit using TLS1.2 and above, vulnerability scanning for infrastructure and firewalls with IDS/IPS)." *Id.* Sequoia also utilizes a security information and event management (SIEM) monitoring solution to log potential threat activities and engages a managed security service provider (MSSP) to monitor the SIEM to alert Sequoia of threats. *Id.* Thus, Plaintiffs' mere assertions of breach caused by inadequate security simply do not stand up to scrutiny. *cf. In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1310 (N.D. Ga. 2019) (plaintiff alleged defendant failed to patch a *known security vulnerability* exploited by hackers).

### c.    Plaintiffs' Negligence Per Se Claim Is Not Cognizable.

Plaintiffs' negligence per se claim should be dismissed with prejudice. *First,* there is no separate, standalone negligence per se cause of action under California law. *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020). *Second*, and as set forth *supra*, Plaintiffs cannot base a negligence *per se* claim on alleged violations of the FTC Act since that statute does not provide a private right of action and Congress intended it to be exclusively enforced by administrative agencies. *Pica*, 2018 WL 5861362, at *9. *Third,* because Plaintiffs' ordinary negligence claim fails (as explained *supra*), their negligence *per se* "claim" fails, too. *See, e.g.*, *Lobstein v. Wa. Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OCl,* 2020

MOTION TO DISMISS

WL 3964788, at *3 (C.D. Cal. June 8, 2020) ("'[A]n underlying claim of ordinary negligence must be viable' before [negligence per se] can be employed") (citation omitted).

### 2. Plaintiffs' Breach of Contract Claim Fails (Count III).

Plaintiffs' breach of contract claim must be dismissed because the Complaint fails to allege the existence of an enforceable agreement or any breach of any agreement.

*First,* Plaintiffs vaguely claim that they are third-party beneficiaries of contracts between Sequoia and its "clients." (*See* Compl. ¶¶ 140–141, 146.) But without identifying a particular contract whereby Plaintiffs were intended rather than incidental beneficiaries, Plaintiffs lack standing to bring a breach of contract claim as a third party. *GECCMC 2005–C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) ("[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."); *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (plaintiff must plausibly allege a "motivating purpose of the contracting parties is to provide a benefit to the third party," and "permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'") (citation omitted); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610–11 (9th Cir. 2020) (affirming dismissal of claim for breach of Facebook's Data Use and Privacy policies because those policies did "not outline shared commitments to which users must abide"). Plaintiffs' generalized allegations do not fulfill this standard.

*Second*, and to the extent Plaintiffs are contending that the "contract" at issue is Sequoia's "Privacy Policy with its clients" (*see* Compl. ¶¶ 142–43), that claim necessarily fails because Sequoia did not affirmatively disclose any information to third parties. Plaintiffs argue that Sequoia violated the Privacy Policy because it promised it would "only provide" certain third-party partners with PII that it "need[s] to deliver the services to us and/or on our behalf." (Compl. ¶ 142 (quoting Sequoia's Privacy Policy).) But there are no facts in the Complaint that plausibly allege that Sequoia "provide[d]" or disclosed Plaintiffs' data to persons other than its third-party partners, and the victim of a data breach cannot be said to have disclosed or provided information

MOTION TO DISMISS

to a third-party bad actor. *See Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1555–56 (2014); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at \*22 (M.D. Fla. Jan. 27, 2020).

### 3.      Plaintiffs' Invasion of Privacy Claim Fails (Count IV).

To state a claim for invasion of privacy under California law, a plaintiff must demonstrate (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest. *In re iPhone Application Litig. (iPhone Application Litig. I)*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Plaintiffs' claim fails because they do not allege an invasion of a privacy interest that is sufficiently "serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). An egregious breach of social norms is an exceptionally high bar, and courts have routinely held that the exposure of sensitive PII as a result of a data breach is insufficient to plead an invasion of privacy claim. *See iPhone Application Litig. I*, 844 F. Supp. 2d at 1063 ("Even negligent conduct that leads to theft of highly personal information, including social security numbers, . . . does not constitute a violation of Plaintiffs' right to privacy"); *Low*, 900 F. Supp. 2d at 1025 (collecting cases); *Schmitt v. SN Servicing Corp. (Schmitt I)*, 2021 WL 3493754, at \*7 (N.D. Cal. Aug. 9, 2021) (dismissing invasion of privacy claim and recognizing data breach case did not involve the "*intentional* disclosures[] of privileged information") (emphasis added). Thus, Plaintiffs' invasion of privacy claim should be dismissed.

### 4.      Plaintiffs' New York General Business Law Claim Fails (Count V).

Plaintiff Abardo (on behalf of a New York subclass) alleges that Sequoia violated New York's Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349. (Compl. ¶¶ 161–71.)

As an initial matter, and as explained in the concurrently filed Motion to Compel Arbitration, Plaintiff Abardo is subject to a mandatory arbitration clause. Because no other named Plaintiff resides in New York, this claim must be dismissed for lack of standing. *See Sponchiado v. Apple Inc.*, 2019 WL 6117482, at \*7 (N.D. Cal. Nov. 18, 2019) ("[I]n a putative class action,

MOTION TO DISMISS

claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage.").

However, even if Plaintiff Abardo (or another named plaintiff) had standing to pursue a claim under Section 349, it should still be dismissed because the Complaint alleges no deceptive conduct that occurred in New York. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (Ct. App. 2002) (noting that Section 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York"). That Plaintiff Abardo resides in New York (Compl. ¶ 163) is irrelevant where the "misrepresentations" and purported omissions were made by Sequoia, which Plaintiffs allege is registered and headquartered in California. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 2018 WL 2084168, at *9 (S.D.N.Y. May 1, 2018) ("[B]ecause the transactions at issue did not occur in New York, the § 349 claim fails").

The Section 349 claim should also be dismissed because the Complaint fails to plead the requisite elements. *First*, the Complaint does not plausibly allege that Sequoia engaged in an act or practice that was "misleading in a material way." *Stutman v. Chem. Bank*, 95 N.Y. 2d 24, 29 (Ct. App. 2000). New York authority shows that the allegation that Sequoia failed to "employ" and adopt "reasonable safeguards" with respect to data security (Compl. ¶ 163) is not enough to "mislead" Plaintiff Abardo. *See Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S. 3d 850, 859–60 (2015) (dismissing Section 349 claim in data breach suit as "[d]efendants' alleged failure to safeguard plaintiffs' [PII and PHI] from theft did not misle[ad] the plaintiffs in any material way" and did not "constitute a deceptive practice within the meaning of the statute"). And the Complaint's contention that Sequoia "misrepresent[ed]" that it would employ a certain level of data security protection to protect users' PII is unsupported by any factual allegations.[6] *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) ("[P]laintiff may not maintain a cause of action under [section 349] where . . . [it] has failed to identify any 'material' 'deceptive acts' engaged in by the defendant.") (citation omitted).

---

[6] While not pled as a part of the Section 349 claim, insofar as Plaintiffs point to Sequoia's Privacy Policy as a misrepresentation, such statements do not plausibly allege a violation of Section 349. *See Abdale*, 19 N.Y.S. 3d at 859.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

*Second*, the Complaint fails to allege any injury *caused* by the purportedly deceptive conduct. *JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*, 38 N.Y.S.3d 658, 600–611 (2016). Plaintiff Abardo also cannot establish that any statement by Sequoia pertaining to data security caused her harm where she fails to allege that she "saw" or was "aware" of any purported misstatements. *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *9 (S.D.N.Y. Mar. 21, 2022). Further, there could be no plausible causal connection between any alleged misrepresentations and Plaintiff Abardo's use of Sequoia's services because it was her employer, not Plaintiff Abardo, who chose Sequoia's services. (*See* Compl. ¶ 163.)

*Third*, insofar as the Section 349 claim is predicated upon violations of other statutes (namely, N.Y. Gen. Bus. Law § 899-aa and the FTC Act), such allegations cannot sustain the claim because those statutes do not provide for a private right of action. *See Abdale*, 19 N.Y.S. 3d at 857–58 (N.Y. Gen. Bus. Law § 899-aa provides no private right of action); *Shostack v. Diller*, 2015 WL 5535808, at *7 (S.D.N.Y. Sept. 16, 2015).

### 5.    Plaintiffs' California Consumer Privacy Act Claim Fails (Count VI).

Plaintiffs allege a violation of the California Consumer Privacy Act ("CCPA") which provides a limited private right of action to consumers whose "personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a)(1). A consumer cannot seek statutory damages without providing written notice at least thirty (30) days before filing an action and if "the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur." *Id.* § 1798.150(b).

*First,* the CCPA does not apply to Sequoia as it is not a "business" as defined by the CCPA but, rather, a "service provider." While the CCPA provides a private right of action against businesses, it does not provide one against service providers like Sequoia. *See id.* § 1798.150(a)(1). Under the CCPA, a "business" is an entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information."

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

*See* Cal. Civ. Code § 1798.140(d)(1).  By contrast, under the CCPA, a "service provider" is an entity that, like Sequoia, "processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract [.]"  *See id.* § 1798.140(ag).  As the Complaint alleges, Sequoia provides various services to its clients who employ Plaintiffs.  (*See, e.g.*, Compl. ¶ 2 ("Sequoia offers human resources, employee compensation, and employee benefits management and administrative services to businesses."); *see also* ¶ 140 ("[Sequoia] entered into various contracts with their clients to perform [workforce management] services . . . .").)  The Complaint does not allege facts suggesting that Sequoia solely or jointly determines the purposes and means of the processing of Plaintiffs' information—indeed, Plaintiffs' employers make these determinations in order to "administer" their employees' "benefits and payroll." (*See* Compl. ¶ 194(b).)  In other words, Plaintiffs were required to provide their PII to Sequoia as a condition of their employment with their employers (Sequoia's clients) so as to receive their wages and benefits from those employers. The CCPA claim should be dismissed for this reason alone.  *See*, *e.g.*, *Karter v. Epiq Sys., Inc.*, 2021 WL 4353275, at \*2 (C.D. Cal. Apr. 19, 2021) (dismissing CCPA claim because plaintiff failed to adequately allege that defendant was a "business" as opposed to "service provider").

*Second*, even if the CCPA applied to Sequoia (it does not), Plaintiffs do not adequately allege that Sequoia failed to "implement and maintain reasonable security procedures and practices."  Cal. Civ. Code § 1798.150(a).  While the complaint pleads a laundry list of reasonable security measures, as explained *supra* (Part III.B.1.b), the Complaint alleges no facts plausibly showing that Sequoia failed to implement such measures.  These conclusory allegations also do not suffice for Plaintiffs' CCPA claim. *See Griffey*, 562 F. Supp. 3d at 57 (dismissing CCPA claim where plaintiff relied on "conclusory allegations" concerning defendant's data security practices); *Maag*, 2021 WL 5605278, at \*2 (same).

*Third,* the CCPA claim fails because the Complaint fails to plausibly allege that Sequoia failed to cure the alleged violations of the CCPA.  Plaintiffs state in a conclusory fashion that Sequoia failed to "cure" their violations (Compl. ¶¶ 184–85), but as Sequoia's responses to the CCPA letters make clear, Sequoia took extensive curative steps after the data breach including

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

"remediation of the vulnerability" and validation of the same through a "third-party forensics firm" and "[t]ransition to other leading security providers." *See* RJN, Exs. 1–5. Thus, the Complaint is devoid of any factual allegations that Sequoia's data security procedures and practices remain deficient. *See In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at \*6 (S.D.N.Y. Feb. 24, 2022) (dismissing CCPA claim where complaint alleged in "conclusory terms that [defendant] had not changed its security practices"). Plaintiffs' ultimate gravamen is that Defendants' "post-attack actions" have not "retroactively cure[d] the unauthorized access, as they provide no assurance that . . . PII was not viewed by – and/or is not still in the hands of – unauthorized third parties." (*Id.* ¶ 184.) Even if this were true, the CCPA does not require businesses to put the genie back in the bottle. *In re Waste Mgmt.*, 2022 WL 561734, at \*6–7 (rejecting argument that defendant had not cured alleged violations of the CCPA because plaintiffs' data was "still out there" and could "still be exploited") Instead, "[i]t just requires them to remedy any 'violation' of their 'duty to implement and maintain reasonable security procedures and practices.'" *Id*. (quoting Cal. Civ. Code §§ 1798(a)(1), 1798(b)). Plaintiffs' CCPA claim must be dismissed.

### 6.    Plaintiffs' California Customer Records Act Claim Fails (Count VIII).

Plaintiffs' California Customer Records Act ("CRA") claim fails for three reasons. *First*, the CRA claim fails because Plaintiffs are not "customers" of Sequoia. The CRA defines "customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." Cal. Civ. Code § 1798.84(b). Here, Plaintiffs do not allege they have purchased or leased any product or service from Sequoia. Instead, and as they admit, Plaintiffs are employees of Sequoia's customers. (*See* Compl. ¶ 40 (recognizing Plaintiffs are Sequoia's "customers' employees and their dependents") and ¶ 97.). Because Plaintiffs alleged that they provided PII to Sequoia or to Sequoia's clients in the course of their employment, rather than as customers, they cannot bring a claim under the CRA. *See Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at \*7 (C.D. Cal. June 15, 2015) (dismissing claims brought under the CRA following a cybersecurity incident because plaintiffs were not customers of the defendant); *Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 WL 16894503, at \*6 (C.D. Cal. July 29, 2022) ("Since Plaintiffs were required to provide their PII to Defendant as

a condition of their employment, not for 'purchasing' or 'obtaining a service' from Defendant, the Court finds that the CRA does not protect Plaintiffs.").

*Second*, the CRA claim fails because, as explained *supra*, the Complaint contains no factual allegations that Sequoia did not implement reasonable security protocols. *See Anderson*, 2019 WL 3753308, at \*5 (dismissing CRA claim because the plaintiffs "fail[ed] to allege any facts in support of their conclusory assertion that" defendant did not implement reasonable security protocols); *Razuki*, 172018 WL 6018361, at \*2 (same).

*Third,* the CRA claim fails because Plaintiffs have not alleged any injury proximately caused by the purported violation. *See* Cal. Civ. Code § 1798.84(b) (permitting suit by "[a]ny customer injured by a violation of [the CRA]"). Just as Plaintiffs fail to allege any injury sufficient to confer standing under Article III, they fail to allege any cognizable injury under the CRA.

**7.    Plaintiffs' California Unfair Competition Law Claim Fails (Count VII).**

**a.    Plaintiffs Lack Statutory Standing Under the UCL.**

**No Economic Injury.**  Statutory standing under the UCL is "substantially narrower" than Article III standing. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011). To assert a claim under the UCL, Plaintiffs must plead they "lost money or property." Cal. Bus. & Prof. Code § 17204; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (plaintiff must show "some form of economic injury") (citation omitted). Here, Plaintiffs have alleged no loss of money or property attributable to the data breach and, instead, argue that their UCL claim is predicated on "the loss of value of their breached PII." (*See* Compl. ¶ 196.) However, this theory fails because PII is not "property under the UCL." *Dugas*, 2016 WL 6523428, at \*11; *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd in relevant part, rev'd in part*, 572 F. App'x 494 (9th Cir. 2014). Moreover, Plaintiffs have not shown how their PII "lost value" as a result of the data breach. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at \*7 (N.D. Cal. Dec. 19, 2019). This is not a case, for example, where Plaintiffs have alleged facts[7] suggesting

---

[7] As discussed *supra* in Note 5, the Complaint, in a conclusory fashion, alleges the named Plaintiffs have incurred "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft." (*See* Compl. ¶ 8; *see also id.* ¶ 166.) However, beyond such unsubstantiated statements, the Complaint contains no factual allegations any of the named

MOTION TO DISMISS

they purchased enhanced credit monitoring in the wake of the data breach. *Schmitt I*, 2021 WL 3493754, at \*8 (UCL standing where plaintiffs alleged they spent money on purchasing credit monitoring protection). Nor would such an allegation make sense here where Sequoia provided three years of free credit monitoring services through Experian.

**No Actual Reliance**. Insofar as the UCL claim is based on a deception theory, Plaintiffs fail to allege with particularity their actual reliance on a misrepresentation or omission. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020); *Maxwell v. Unilever United States, Inc.*, 2014 WL 4275712, at \*4 (N.D. Cal. Aug. 28, 2014) (actual reliance required under UCL). The only specific misrepresentation that Plaintiffs allege anywhere in the Complaint relates to Sequoia's statement in its Privacy Policy that it would "only provide" Plaintiffs' PII to certain service providers (Compl. ¶ 142), but Plaintiffs fail to articulate how that statement is false or misleading. *In re Yahoo! Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at \*28 (N.D. Cal. Aug. 30, 2017) (reciting statements in Complaint's "general factual allegations," without "explain[ing] why any of these statements are false and misleading" is insufficient). Moreover, because it was their employers who decided to use Sequoia's services, as a matter of law the impugned representations could not have been a "substantial factor" in their decision to use Sequoia. *In re iPhone Application Litig. (iPhone Application Litig. II)*, 6 F. Supp. 3d 1004, 1019–20 (N.D. Cal. 2013). Simply, Plaintiffs did not make the decision to use Sequoia's services.

### b. Plaintiffs Fail To State a Claim Under Any UCL Prong.

**No "Unlawful" Conduct.** None of Plaintiffs' three predicates for their "unlawful" claim—neither the FTC Act, the CRA, nor vague references to the "common law"—provides a sufficient basis for an unlawful UCL claim. While Plaintiffs make oblique references to the FTC Act, they do not allege in their UCL claim (or anywhere else) which "specific provision of the FTC Act was allegedly violated, let alone how." *Schmitt v. SN Servicing Corp (Schmitt II)*, 2021

plaintiffs have incurred any such out-of-pocket expenses following the breach, or that such expenses were necessary in light of the complimentary identity theft protection services offered by Sequoia through Experian. *See Gardiner I*, 2021 WL 2520103, at \*6 (allegations of out-of-pocket expenses did not constitute cognizable injury where plaintiff offered "no factual allegations in support of the alleged credit monitoring services, nor . . . that such services were reasonable and necessary.").

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

WL 5279822, at \*5 (N.D. Cal. Nov. 12, 2021).[8]  As discussed *supra*, Plaintiffs' CRA claim cannot form the basis for a UCL claim because they are not "customers" of Sequoia, their allegations that Sequoia failed to employ reasonable security measures is unsupported by facts, and they have not identified any injury caused by a purported violation of the CRA.  As to the "common law," Plaintiffs do not even identify the "common law" they are relying upon; in any event, common law claims cannot form the basis of an "unlawful" conduct claim.  *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110–11 (E.D. Cal. 2010) (breach of contract cannot form basis); *Hartless v. Clorox Co.*, 2007 WL 3245260, at \*5 (S.D. Cal. Nov. 2, 2007) (same for negligence claims).

**No "Fraudulent" Conduct.**  Plaintiffs state no claim under the "fraud" prong as they do not identify a specific misrepresentation or omission, let alone plead under Rule 9(b) that a reasonable consumer would likely have been deceived.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Plaintiffs also fail to allege any basis for inferring that Sequoia knew its security measures were inadequate.  *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at \*4 (N.D. Cal. Jan. 28, 2011) (plaintiff must "plead the company's knowledge of the putative defect").  Plaintiffs' "conclusory allegations of knowledge" are insufficient.  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138 (N.D. Cal. 2013) (citation omitted).  Insofar as Plaintiffs' claim is predicated on an omission theory (*see* Compl. ¶ 194(a)), the Ninth Circuit has made clear that an omitted fact is not likely to deceive as a matter of law unless it "relate[s] to the central functionality of the product" or is "contrary to a representation actually made by the defendant." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863–65 (9th Cir. 2018) (citation omitted).  Plaintiffs have not alleged facts sufficient to establish either here.

**No "Unfair Conduct."**  Plaintiffs fail to articulate any independent conduct that would render Sequoia's actions unfair as opposed to fraudulent or unlawful, requiring dismissal of the claim.  *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) ("[T]he unfair prong

---

[8] While Plaintiffs claim Sequoia breached standards established in the FTC publication, "*Protecting Personal Information: A Guide for Business*" (Compl. ¶ 57), this document does not "constitute a law or federal regulation, nor carries the weight of such" and, therefore, cannot "serve as a predicate" for Plaintiffs' unlawful UCL claim. *Schmitt II*, 2021 WL 5279822, at \*6.

DAVIS WRIGHT TREMAINE LLP

of the UCL cannot survive if the claims under the other two prongs . . . do not survive.") (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022) (same).

### 8.    Plaintiffs' Unjust Enrichment Claim Fails (Count IX).

Plaintiffs' unjust enrichment claims should be dismissed for two reasons. *First*, Sequoia's unidentified contracts with employers underscore both their contract and unjust enrichment claims, but the unjust enrichment claim must be dismissed because Plaintiffs have not pled any facts showing any alleged contract is "unenforceable or invalid." *In the Black Res., LLC v. Blitz Design, Inc.,* 2022 WL 17082372, at *6 (N.D. Cal. Nov. 17, 2022). Second, unjust enrichment is only a viable restitution mechanism where the plaintiff "conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009). Sequoia did not receive any benefit as the victim of a cyberattack, and because Plaintiffs' employers' paid for Sequoia's services (Compl. ¶ 146), Plaintiffs did not pay Sequoia for any benefit that could have been unjustly retained. *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014).

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) or, alternatively, failure to state a claim pursuant to Rule 12(b)(6).

DATED: June 16, 2023                          Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*s/ Jeffrey S. Bosley*
JEFFREY S. BOSLEY
Attorneys for Defendants
SEQUOIA BENEFITS & INSURANCE
SERVICES, LLC DBA SEQUOIA
CONSULTING GROUP and SEQUOIA ONE
PEO, LLC

FREEMAN MATHIS & GARY, LLP
DAVID M. LIU
Attorneys for Defendant
SEQUOIA ONE PEO, LLC

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP