DAVID M. BERGER (277526)
LINDA P. LAM (301461)
MARK H. TROUTMAN (*pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
*dmb@classlawgroup.com*
*lpl@classlawgroup.com*
*mht@classlawgroup.com*

RACHELE R. BYRD (190634)
STEPHANIE AVILES (350289)
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
*byrd@whafh.com*
*saviles@whafh.com*

*Interim Class Counsel*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SEQUOIA BENEFITS AND INSURANCE DATA BREACH LITIGATION | Case Number: 3:22-cv-08217-RFL |
| | **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| | Date:        September 9, 2025<br>Time:        10:00 AM<br>Dept:        Courtroom 15 – 18th Floor<br>Judge:      Honorable Rita F. Lin |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEASE TAKE NOTICE that on September 9, 2025 at 10:00 AM, or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Rita F. Lin, presiding, Plaintiffs Amy Carter, Adam Enger, Christopher Cottrell, Erin McGurk, Seth Jones, and Kevin Mindeguia ("Plaintiffs") will and hereby do move this Court for an order granting this Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class; preliminarily approving the Settlement as fair, reasonable, and adequate; directing notice to the Settlement Class in the form and manner proposed by the Parties as set forth in the Settlement Agreement, the Settlement Administrator's Declaration, and all attached exhibits; appointing Kroll Settlement Administration LLC ("Kroll") to serve as the Settlement Administrator; appointing Plaintiffs as Settlement Class Representatives and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's forthcoming motion for an award of attorneys' fees, costs, expenses, and service awards.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................... 2

    A.  Plaintiffs' Allegations ................................................................................. 2

    B.  History of the Litigation and Settlement Negotiations ............................... 3

    C.  Terms of the Settlement ............................................................................. 4

        1.  Proposed Settlement Class ................................................................ 4

        2.  Changes to Sequoia's Data Security Practices ................................ 5

        3.  Settlement Fund ............................................................................... 5

            a.  Out-of-Pocket Losses and Attested Time ............................. 5

            b.  Alternative Compensation ..................................................... 6

        4.  Class Notice and Claims Administration ......................................... 6

        5.  Service Awards ................................................................................. 8

        6.  Attorneys' Fees and Expenses ......................................................... 8

        7.  Residual Funds / Pro Rata Reduction .............................................. 8

        8.  Releases ............................................................................................ 8

III. ARGUMENT ....................................................................................................... 9

    A.  The Court Should Certify the Proposed Settlement Class. ........................ 9

        1.  The Class Meets the Requirements of Rule 23(a). .......................... 9

        2.  The Class Meets the Requirements of Rule 23(b). ........................ 10

    B.  The Court Should Preliminarily Approve the Proposed Settlement Pursuant to the Churchill and Rule 23(e)(2) Factors.......................................................... 11

        1.  The Churchill Factors Support Approval. ...................................... 12

            a.  The Strength of Plaintiffs' Case ......................................... 12

            b.  The Risk, Expense, and Likely Duration of Further Litigation.................. 13

            c.  The Risk of Maintaining Class Action Status Through Trial ...................... 14

            d.  The Amount Offered in Settlement ..................................... 15

            e.  The Extent of the Discovery Completed and the State of Proceedings........ 16

            f.  The Experience and Views of Counsel................................. 16

            g.  The Presence of a Government Participant ......................... 16

            h.  The Reaction of Class Members to the Proposed Settlement ...................... 16

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

    i.    Lack of Collusion Among the Parties...........................................................16

  2.  The Settlement is Likely to Merit Final Approval Under the Rule 23(e)
      Factors...................................................................................................................17

      a.    Plaintiffs and class counsel have adequately represented the class..............18

      b.    The settlement was negotiated at arm's length...............................................19

      c.    The settlement is more than adequate. .........................................................19

      d.    The risk, delay, and other drawbacks associated with further litigation are
            substantial.......................................................................................................19

      e.    Class members will be notified of the settlement and the barrier to
            participation will be low. ...............................................................................19

      f.    Attorneys' fees will be limited to 25 percent of the Settlement Fund..........20

      g.    There are no side agreements. .......................................................................20

      h.    The settlement and allocation plan treat class members equitably...............20

C.  The Court Should Approve the Proposed Notice Plan. ................................................21

  1.  The settlement provides for the best method of notice practicable under the
      circumstances..........................................................................................................21

  2.  The proposed form of notice adequately informs class members of the
      settlement and their right to object..........................................................................21

  3.  Notice of the settlement will be provided to appropriate federal and state
      officials. ...................................................................................................................22

  4.  Appointment of a Settlement Administrator .........................................................23

  5.  Comparable Outcomes ...........................................................................................23

D.  The Schedule for Final Approval ................................................................................24

IV.  CONCLUSION .................................................................................................................25

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                         **<u>Page(s)</u>**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................18

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................9, 11

*Charalambous v. Liberty Mut. Ins. Co.*,
   2024 WL 1586701 (N.D. Cal. Mar. 15, 2024) ....................................................................17

*Churchill Vill., LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..............................................................................................12

*Clancy v. Salvation Army*,
   No. 22 CV 1250 (N.D. Ill.) ..................................................................................................22

*Davis v. Lab'y Corp. of Am. Holdings*,
   2024 WL 489288 (9th Cir. Feb. 8, 2024), *cert. granted in part*, 145 S. Ct. 1133 (2025),
   *appeal dismissed as improvidently granted, Lab'y Corp. of Am. Holdings v. Davis*, 145
   S. Ct. 1608 (2025).................................................................................................13, 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................10

*Harbour v. California Health & Wellness Plan*,
   2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ................................................................15, 23

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
   2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ....................................................................15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................21

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................12, 17

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001)..............................................................................20

*In e JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   19-MD-02913-WHO (N.D. Cal.)........................................................................................22

*In re MagSafe Apple Power Adapter Litig.*,
   2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ......................................................................24

*In re: Orrick Herrington & Sutcliffe LLP Data Breach Litig.*,
   No. 3:23-cv-04089 (N.D. Cal.) ..........................................................................................15

iv

**Page(s)**

*In re PostMeds, Inc. Data Breach Litig.*,
    2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) ................................................................. 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27,
    2022) ............................................................................................................................ 11, 15

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................................... 11

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ...................................................................................... 12

*Lagunas v. Young Adult Inst., Inc.*,
    2024 WL 1025121 (N.D. Cal. Mar. 8, 2024) .............................................................. 9

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................ 14, 16

*Maldini v. Marriott Int'l, Inc.*,
    2025 WL 1560372 (4th Cir. June 3, 2025) ............................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................... 22

*Sandoval v. Cnty. of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ...................................................................................... 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................... 10

*Sweet v. Cardona*,
    641 F. Supp. 3d 814 (N.D. Cal. 2022) ...................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................................... 10

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
    2024 WL 4582295 (E.D. Cal. Oct. 25, 2024) .......................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................................... 9

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) .................................................................................... 20

**Page(s)**

**Statutes**

28 U.S.C. § 1715 ..................................................................................................23

**Rules**

Fed. R. Civ. P. 23(a) .........................................................................................9, 10

Fed. R. Civ. P. 23(b) ....................................................................................2, 10, 21

Fed. R. Civ. P. 23(c) .........................................................................................21, 22

Fed. R. Civ. P. 23(e) ........................................................................................*passim*

**Other Authorities**

4 Newberg and Rubenstein on Class Actions § 13:14 ........................................18

Newberg on Class Actions § 13:10 (5th ed.) ....................................................11

Manual for Complex Litigation, § 21.632 ..........................................................9

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

## I.     INTRODUCTION

1

2          In late 2022, Sequoia Benefits and Insurance Services, LLC, dba Sequoia Group and

3    Sequoia One PEO, LLC (collectively, "Sequoia" or "Defendants") acknowledged that they had

4    been the target of a cyberattack and that information related to approximately 580,000 people

5    may have been accessible in the attack (the "Data Security Incident"). The data that may have

6    been accessible included class members' names, Social Security numbers, wage data related to

7    benefits, and medical information. Sequoia offered those affected credit monitoring but has

8    denied that any information has ever been misused.

9          In October 2024, after almost two years of litigation that included filing a consolidated

10   class action complaint, a contested Motion to Dismiss, and protracted discovery negotiations, the

11   Representative Plaintiffs[1] and Sequoia began engaging in settlement discussions. The parties

12   have since finalized the terms of a Settlement Agreement ("S.A."), attached as Exhibit 1 to the

13   accompanying Declaration of David M. Berger. The Agreement requires Sequoia to establish an

14   $8.7 million non-reversionary Settlement Fund for the benefit of the class. The fund will be used

15   to individually notify Settlement Class Members about the settlement and to pay Settlement Class

16   Members' out-of-pocket expenses that may have been incurred as a result of the data breach, up

17   to $7,500 each. Out-of-pocket expenses may also reimburse Settlement Class Members for time

18   spent remedying issues related to the data breach, at a rate of $30 per hour. As an alternative to

19   out-of-pocket losses including associated lost time, Settlement Class Members may submit a

20   claim for and receive a cash payment of approximately $75 per person, subject to *pro rata* upward

21   or downward adjustment. California Subclass Members may also submit a claim for an additional

22   $150 per person, also subject to *pro rata* adjustment. The Agreement also requires Sequoia to

23   maintain meaningful data security practices that directly address the security elements that

24   contributed to the breach or that might otherwise help prevent a future incident.

25         The Agreement affects the legal rights of absent class members and so requires judicial

26   approval before it can go into effect. Accordingly, Plaintiffs respectfully request that the Court

27

28   _____

[1] Unless otherwise indicated, the capitalized terms herein shall have the same definition as set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of David M. Berger.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

preliminarily approve the parties' Agreement and enter an order that:

    1. Certifies the proposed settlement class under Rule 23(b)(3);

    2. Preliminarily approves the proposed settlement as fair, reasonable, and adequate;

    3. Directs notice to be disseminated to class members in the form and manner proposed by the Parties as set forth in the Agreement and Exhibits A-H thereto;

    4. Appoints Kroll to serve as the Settlement Administrator;

    5. Appoints Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; and

    6. Sets a hearing date and schedule for final approval of the settlement and consideration of Class Counsel's fee application.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

Sequoia is an employee benefits and services administrator. It contracts with over 1,700 corporate clients to provide administration services for payroll and employment benefits, including retirement and health benefits, for its clients' employees and their family members. ¶¶ 2–3, 28–29, 34–35, 40.[2] In December 2022, Sequoia publicly announced that it had experienced a data security incident in September and October 2022, during which cybercriminals were able to gain access to Sequoia's systems; it notified Plaintiffs that their information may have been impacted as part of that breach. ¶¶ 1, 3, 4. Among the data that was potentially exposed in the Data Security Incident was Plaintiffs' personally identifiable information ("PII"), including Social Security numbers and medical information. ¶¶ 8, 42–43, 88.

Following Sequoia's announcement, Plaintiffs filed several class action complaints on behalf of the individuals whose PII may have been compromised in the Data Security Incident. *See* ECF Nos. 1, 14, 21. Plaintiffs alleged that Sequoia failed to adequately secure its systems and failed to take basic security precautions to protect sensitive employee data. *See, e.g.*, ECF No. 1 ¶ 5. Ultimately, various plaintiffs filed six separate class action lawsuits against Sequoia in this

---

[2] Citations to "¶ _" throughout, unless otherwise specified, are to Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint"), ECF No. 47.

District arising out of the Data Security Incident. *See* ECF Nos. 22 & 42. The Court consolidated those cases into this master action, *see* ECF Nos. 22 & 42, and—after contested briefing—appointed the undersigned as interim class counsel for the putative class, *see* ECF No. 46.

Interim class counsel filed a Consolidated Class Action Complaint on April 26, 2023, bringing claims for negligence, negligence per se, breach of contract (third party beneficiary), invasion of privacy, violation of New York General Business Law ("NYGBL") § 349, violation of the California Consumer Privacy Act ("CCPA"), violation of the California Unfair Competition Law ("UCL"), violation of the California Consumer Records Act ("CCRA"), and unjust enrichment. *See* ECF No. 47. Plaintiffs sought equitable and injunctive relief, as well as monetary damages, including actual, nominal, statutory, treble, consequential, and punitive damages. *See id.* (Prayer for Relief). Plaintiffs also sought attorneys' fees and costs. *Id.*

Sequoia denies that it employed unreasonable data security or that Plaintiffs' claims have merit.

**B.    History of the Litigation and Settlement Negotiations**

On June 16, 2023, Sequoia One PEO, LLC filed three Motions to Compel Arbitration and Stay the Action as to certain then-named plaintiffs, *see* ECF Nos. 78–80, and both Sequoia Defendants moved to dismiss the Consolidated Class Action Complaint, *see* ECF No. 81. Plaintiffs filed their Opposition to the Motion to Dismiss in July 2023 (while conceding dismissal of their claims for violation of the NYGBL), *see* ECF No. 84, and the individuals subject to the motions to compel arbitration voluntarily dismissed their claims without prejudice in September 2023, *see* ECF No. 88.

The Court granted in part and denied in part Sequoia's motion to dismiss. *See* ECF No. 98. Specifically, the Court denied Sequoia's motion to dismiss for lack of standing; denied Sequoia's motion to dismiss Plaintiffs' claims for negligence, negligence per se, breach of contract (third party beneficiary), and for violation of the CCPA; and dismissed Plaintiffs' claims for invasion of privacy, unjust enrichment, and violations of the CCRA and UCL. *See id.* Following the Court's order and Sequoia's Answer to the Consolidated Complaint, *see* ECF No. 104, the

Parties began extensive discovery efforts. Between September 2024 and February 2025, the parties served and responded to dozens of interrogatories and requests for production, and Plaintiffs subpoenaed documents from four non-parties to the litigation. *See* Berger Decl. ¶ 4. The Parties also met and conferred extensively regarding discovery, and in one instance presented a discovery dispute to Magistrate Judge Ryu. *See* ECF Nos. 111, 114, 117.

In the midst of their discovery efforts, the Parties also began to explore a mediated resolution. On November 7, 2024, the Parties participated in a full-day mediation with Jill Sperber of Judicate West. *See* Berger Decl. ¶ 5. Though the mediation was unsuccessful, the Parties continued to negotiate with the assistance of Ms. Sperber over the course of months; and eventually, the Parties accepted a mediator's proposal on March 13, 2025. *Id.* ¶ 6. The Parties thereafter negotiated and finalized a settlement term sheet and finally executed a full Settlement Agreement on July 2, 2025. *Id.* ¶ 7. The Settlement Agreement unquestionably provides significant relief to the Proposed Settlement Class, as set forth below, while avoiding the attendant risks, costs, and burdens of further litigation for all parties.

## C.    Terms of the Settlement

### 1.    Proposed Settlement Class

If approved, the Parties' settlement would offer relief to the following Classes for settlement purposes:

> **Nationwide Class**: All persons in the United States to whom Sequoia sent notice of the Data Security Incident.

> **California Subclass**: All California residents at the time of the Data Security Incident, which occurred between September 22 and October 6, 2022, to whom Sequoia sent notice of the Data Security Incident.

S.A. ¶ 1.8. Data Security Incident is defined as the data breach disclosed by Defendants on or around December 2022, and which is the subject of this litigation. *Id.* ¶ 1.11. Excluded from the classes are officers and directors of Defendants, Class Counsel, the United States District Judge overseeing approval, and any members of their immediate family and judicial staff. *Id.* ¶ 1.8. According to Defendants' books and records, 584,109 individuals were notified of the breach, of

1    which 210,673 were California residents at the time of the Data Security Incident. *Id.*

2              **2.      Changes to Sequoia's Data Security Practices**

3              Defendants have agreed to maintain or implement certain business practice changes

4    designed to prevent future data security incidents. *See* S.A. ¶ 12.1. Because the business practices

5    agreement describes specifics relating to Defendants' security controls and applications, Plaintiffs

6    are filing the exact terms of those business practices changes under seal for the Court's review.

7              **3.      Settlement Fund**

8              Under the Settlement Agreement, Sequoia will pay $8,700,000 into a non-reversionary

9    cash settlement fund for the benefit of Class Members. S.A. ¶ 2.1. The Settlement Fund will be

10   used to pay compensation to settlement class members who submit valid and timely Claim Forms,

11   including (1) Reimbursement for Out-of-Pocket Losses and Attested Time, or (2) an Alternative

12   Cash Payment estimated at $75 per person, subject to upward or downward proration. S.A.

13   ¶¶ 2.2.1–2.2.2. In addition to (1) or (2), members of the California Subclass are entitled to a

14   California Privacy Payment, estimated at $150 per person, subject to upward or downward

15   proration. S.A. ¶ 2.2.2(a).

16             **a.      Out-of-Pocket Losses and Attested Time**

17             Class members may submit a Claim Form for Out-of-Pocket Losses and Attested Time

18   up to $7,500 per individual. *Id.* ¶ 2.2.1. "Out-of-Pocket Losses" are unreimbursed costs or

19   expenditures incurred by a Settlement Class Member that are fairly traceable to the Data

20   Security Incident, and include without limitation: (1) unreimbursed costs, expenses, losses or

21   charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other

22   possible misuse of the Settlement Class Member's personal information; (2) other

23   miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage,

24   copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other

25   mitigative costs that were incurred on or after September 22, 2022 (the earliest verifiable date

26   the Data Security Incident occurred) through the date of the Settlement Class member's claim

27   submission. *Id.* Settlement Class Members who elect to submit a claim for reimbursement of

28

Out-of-Pocket Losses must provide to the Claims Administrator the information required to evaluate the claim. *Id.*

For Attested Time, Settlement Class Members with Out-of-Pocket Losses may submit a claim for up to 4 hours of time spent remedying issues related to the Data Security Incident. *Id.* Settlement Class Members may receive $30 per hour by providing an attestation and a brief description of the actions taken in response to the Data Security Incident. *Id.*

### b.    Alternative Compensation

In lieu of Out-of-Pocket Losses including Attested Time, Settlement Class Members can submit a Claim Form and receive an "Alternative Cash Payment" of approximately $75 per person, though the final amount may be subject to *pro rata* increase or decrease. *Id.* ¶ 2.2.2. California Subclass Members, in addition to their Out-of-Pocket Loss/Attested Time or Alternative Cash Payment, may receive an additional California Privacy Payment estimated at approximately $150 per person, also subject to upward or downward proration. *Id.* The actual amount of Alternative Compensation payments will be determined by: (1) taking the total settlement fund; (2) deducting Court-approved costs for (i) notice and settlement administration, (ii) service awards, (iii) attorneys' fees and litigation expenses, and (iv) benefits paid for Out-of-Pocket Losses and Attested Time; and (3) dividing the remaining funds so that each Alternative Cash Payment recipient receives one share, and each California Subclass member receives an additional two shares. *Id.* This formula allows payments to be adjusted proportionally based on the final Settlement Fund balance and number of eligible claimants. *Id.*

If a Settlement Class Member's Alternative Compensation payment would be higher than any claimed Out-of-Pocket Losses and/or Attested Time, the Settlement Class Member will be awarded the Alternative Compensation Payment. *Id.* ¶ 2.2.1.

### 4.    Class Notice and Claims Administration

Following receiving multiple competitive bids, the Parties have selected Kroll to act as the Claims Administrator. *Id.* ¶ 4.1. The costs to provide Notice and Claims Administration will be paid from the Settlement Fund. *See id.* ¶¶ 4.1, 4.3.

1    Notice is to be provided as follows: No later than fourteen (14) days after entry of a

2    Preliminary Approval Order, Sequoia shall provide the Claims Administrator with the name, last

3    known physical address, and email address of each Class Member to the extent known

4    (collectively, "Class Member Information"). *Id.* ¶ 5.3.1. Prior to the dissemination of notice, the

5    Claims Administrator shall establish a Settlement Website that will inform Class Members of

6    the terms of the Settlement Agreement, their rights, dates and deadlines, and related

7    information. *Id.* ¶ 5.3.2. The Settlement Website shall include, in .pdf format and available for

8    download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary

9    Approval Order; (iv) the Settlement Agreement; (v) the operative Complaint; (vi) Sequoia's

10   responsive pleadings; and (vii) any other materials agreed upon by the Settling Parties and/or

11   required by the Court. *Id.* The Long Notice and Claim Form will also be available in Spanish on

12   the Settlement Website. *Id.* The Settlement Website shall provide Class Members with the

13   ability to complete and submit the Claim Form electronically. *Id.* The Claims Administrator will

14   also set up a toll-free help line to provide Class Members with information about the Settlement.

15   *Id.* ¶ 5.3.5. Upon request to the help line, the Claims Administrator will provide copies of the

16   Long Notice, paper Claim Form, and the Settlement Agreement. *Id.*

17    Within 30 days following entry of the Preliminary Approval Order, the Claims

18   Administrator shall commence the Notice Plan, including beginning to send Email Notice to Class

19   Members by email and the Short Notice by U.S. Mail to those Class Members for whom

20   Defendants do not have an email address. *Id.* ¶ 5.3.3. The Email Notice and Short Notice shall

21   include, among other information: a description of the material terms of the Settlement; how to

22   submit a Claim Form; the Claim Form Deadline; the deadline to opt out of the Settlement Class;

23   the deadline to object to the Settlement and/or application for attorneys' fees, costs and service

24   awards; the date and time of the Final Fairness Hearing; and the Settlement Website address at

25   which Class Members may access the Settlement Agreement, the Long Notice, and other related

26   documents and information. *Id.*

27    For Email Notices that experience a hard bounce-back or are otherwise undeliverable,

28

incorrect, or sent to a non-functional email, the Claims Administrator shall perform reasonable physical address traces. *Id.* ¶ 5.3.4. Those Settlement Class Members whose physical addresses were identified will be sent a Short Notice via U.S. Mail no later than 60 days before the original date set for the Final Approval Hearing. *Id.*

### 5. Service Awards

After the Parties reached agreement as to the essential terms of a settlement (i.e., Settlement Class benefits), the Settling Parties negotiated the amount of a service award to the Representative Plaintiffs. *Id.* ¶ 9.1. Subject to Court approval, the Representative Plaintiffs shall seek, and Sequoia will not oppose, a service award amount not to exceed $3,500 per Representative Plaintiff, for a total of $21,000. *Id.* The Claims Administrator shall pay the service awards approved by the Court from the Settlement Fund. *Id.*

### 6. Attorneys' Fees and Expenses

After the Parties reached agreement as to the essential terms of a settlement (i.e., Settlement Class benefits), the Settling Parties negotiated the amount of Plaintiffs' attorneys' fees and litigation expenses. *Id.* ¶ 9.2. Plaintiffs shall seek an award of attorneys' fees not to exceed one-quarter of the Settlement Fund ($2,175,000) and reasonable litigation expenses approved by the Court, an amount that Defendants agree not to oppose. *Id.* The Claims Administrator shall pay the attorneys' fees and expenses approved by the Court from the Settlement Fund. *Id.*

### 7. Residual Funds / Pro Rata Reduction

If compensation for Out-of-Pocket Losses, Attested Time, Alternative Compensation, Costs of Claims Administration, service awards to Class Representatives, and attorneys' fees and litigation expenses do not exhaust the Settlement Fund, the Parties shall meet and confer regarding the appropriate use of such residual funds, including the possibility of using residual funds for additional Settlement Class Member benefits, if practicable, or whether any such funds shall be paid to a *cy pres* recipient approved by the Court. *Id.* ¶ 2.4.

### 8. Releases

In exchange for the benefits provided under the Settlement Agreement, the Settlement

Class Members (including Settlement Class Representatives) will release any legal claims reasonably related to the operative facts alleged in or otherwise described by the Consolidated Class Action Complaint. *Id.* ¶ 8.1. In addition, Sequoia will release any legal claims against the Settlement Class Representatives, Settlement Class Members, and Proposed Settlement Class Counsel based upon the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims. *Id.* ¶ 8.2. All Parties retain their right to seek enforcement of the Settlement Agreement. *Id.* ¶¶ 8.1, 8.2.

## III.   ARGUMENT

**A.     The Court Should Certify the Proposed Settlement Class.**

**1.      The Class Meets the Requirements of Rule 23(a).**

Before assessing the parties' settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here. Fed. R. Civ. P. 23(a).

The proposed Settlement Class, set forth above in Section II.C.1, includes 584,109 people, and thus readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *see, e.g.*, *Lagunas v. Young Adult Inst., Inc.*, 2024 WL 1025121, at *3 (N.D. Cal. Mar. 8, 2024) (class of 299 employees satisfies numerosity). The proposed Class also satisfies the commonality requirement of Rule 23(a), which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The central question behind every claim in this litigation is whether Sequoia adequately secured class members' personal information. The answer to that question depends on common evidence that does not vary among Class Members and so can be fairly resolved— whether through litigation or settlement—for all Class Members at once.

The final requirements of Rule 23(a)—typicality and adequacy—are likewise satisfied

1    here. The Settlement Class Representatives each had personal information that Sequoia stored

2    and that may have been affected by the Data Security Incident, and so were affected by the same

3    data security that Plaintiffs allege harmed the rest of the class. *See* ECF No. 47; *Sandoval v.*

4    *Cnty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018) ("The test for typicality is whether other

5    members have the same or similar injury, whether the action is based on conduct which is not

6    unique to the named plaintiffs, and whether other class members have been injured by the same

7    course of conduct.") (citation omitted). The proposed class representatives also have no

8    conflicts with the class; have participated actively in the case; and are represented by

9    experienced attorneys who were previously appointed by the Court to represent Class Members'

10   interests. *See* Berger Decl. ¶ 8; *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)

11   (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and are willing to

12   prosecute the action vigorously on behalf of the class).

13          **2.      The Class Meets the Requirements of Rule 23(b).**

14          "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

15   certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

16   (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the proposed class is

17   maintainable under Rule 23(b)(3), as common questions predominate over any questions

18   affecting only individual members and class resolution is superior to other available methods for

19   a fair resolution of the controversy. *Id.* Plaintiffs' liability case depends, first and foremost, on

20   whether Sequoia used reasonable data security to protect Class Members' PII. That question can

21   be resolved using the same evidence for all Class Members and thus is the precise type of

22   predominant question that makes a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v.*

23   *Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action

24   are common to the class and can be said to predominate, the action may be considered proper

25   under Rule 23(b)(3) . . . .'").

26          Certification is particularly appropriate in this context because manageability

27   considerations do not need to be taken into account: "the proposal is that there be no trial," and

28

so manageability considerations have no impact on whether the proposed settlement class should be certified. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether Sequoia properly secured the personal information it stored, such that Sequoia's security should be improved and Class Members affected by the Data Security Incident provided with a remedy. As a practical matter, that issue cannot be resolved through individual trials or settlement negotiations: the amount at stake for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). A class action is thus the superior method of adjudicating consumer claims arising from this data breach—just as in other data breach cases where a classwide settlement has been approved. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *8 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ("Class treatment is the superior method of adjudicating the consumer claims arising from the data breach because the issues cannot practically be resolved through millions of individual trials or settlement negotiations." (collecting cases)).

 Sequoia agrees that certification is appropriate for purposes of settlement, but reserves all arguments relating thereto should the settlement not obtain final approval.

**B.    The Court Should Preliminarily Approve the Proposed Settlement Pursuant to the *Churchill* and Rule 23(e)(2) Factors.**

Before the Parties' settlement can be approved, the Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be quite expensive, so it has become customary for courts to first conduct a preliminary fairness review. *See* Newberg on Class Actions § 13:10 (5th ed.). This Court "conducts a searching inquiry at the preliminary approval stage to avoid the costs and pitfalls of proceeding to final approval of a settlement that is unlikely to satisfy Rule 23(e)." Standing Order for Civil Cases Before Judge Rita F. Lin at 7.

Accordingly, Plaintiffs address each of the *Churchill* factors articulated by the Ninth

---

11

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

Circuit (while recognizing that at least one of those factors—the reaction of class members—is not yet known) and submit that they collectively weigh in favor of judicial approval:

(1) the strength of the plaintiff's case;

(2) the suit's risk, expense, complexity, and the likely duration of further litigation;

(3) the risk of maintaining class-action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of class members to the proposed settlement.

*Sweet v. Cardona*, 641 F. Supp. 3d 814, 833 (N.D. Cal. 2022) (citing *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)). Rule 23(e)(2) also requires the district court to consider an overlapping set of factors. *See Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Plaintiffs address the 23(e) factors below.

### 1.    The *Churchill* Factors Support Approval.

#### a.    The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. As discussed briefly above, Plaintiffs submit that the evidence suggests that the Data Security Incident occurred because Sequoia failed to adequately secure and safeguard electronically stored PII and PHI that Sequoia collected and maintained. This allowed unauthorized third persons to potentially access approximately 584,109 Class Members' sensitive PII and PHI, including, without limitation: names; addresses; dates of birth; gender; employment status; marital status; Social Security numbers; work email addresses; wage data related to benefits; member identification cards; attachments that may have been provided for advocate services; government issued ID cards, including driver's licenses; COVID-19 test results; vaccination cards; and emergency contacts and beneficiaries' information.

1        The liability case is not ironclad, however. Sequoia argues that it expends significant

2   resources and pays careful attention to its data security protocols, policies, training, and

3   technology. Sequoia further argues that the data impacted was limited, and that it had a managed

4   security service provider ("MSSP") in place at the time of the incident. Sequoia then took steps

5   to secure the return of any exfiltrated information, including negotiating with and paying the

6   bad actor in exchange for evidence of deletion of any exfiltrated information. Since then,

7   Sequoia has continued to monitor the dark web for the information at issue, and it has found no

8   evidence of any information originating with Sequoia on the dark web. Plaintiffs may face other

9   issues at class certification, including the possibility that a sizeable share of claimants are

10  subject to arbitration or have signed class waivers.

11       Plaintiffs believe they had answers to Sequoia's contentions, and a reasonably good

12  chance of proving that Sequoia's data security was inadequate. Plaintiffs further believe that if

13  they establish that central factual issue, Sequoia is likely to be found liable under at least some of

14  the liability theories and state laws Plaintiffs had pled in their complaint. Plaintiffs believe their

15  damages theories also stand a good chance of succeeding in some form, as they had withstood

16  vigorous legal challenges at the motion-to-dismiss stage. The range of potential outcomes is large,

17  however. A sizeable share of the damages Plaintiffs sought were tied to statutory damages

18  stemming from a violation of the CCPA claim. The value of the claims would fall substantially if

19  Plaintiffs lost that claim. Sequoia would have challenged Plaintiffs' motion for class certification

20  and supporting expert reports. Recent class actions also suggest Sequoia would challenge Class

21  Members' standing, potentially precluding certification. *Davis v. Lab'y Corp. of Am. Holdings*,

22  No. 22-55873, 2024 WL 489288, at *1 (9th Cir. Feb. 8, 2024), *cert. granted in part*, 145 S. Ct.

23  1133 (2025), *appeal dismissed as improvidently granted*, 145 S. Ct. 1608 (2025). Sequoia would

24  have also moved for summary judgment on any individual or collective claims following the

25  Court's Order on class certification.

26          **b.**     **The Risk, Expense, and Likely Duration of Further Litigation**

27       Overall, it is fair to characterize this litigation as a complex case that still faces

28

1    numerous hurdles, a well-funded and committed defense, and a wide range of possible

2    outcomes. The case involves half a million people, legal claims implicating federal and state

3    laws, highly technical subject matter, likely multiple expert witnesses, and a motion for class

4    certification and likely related *Daubert* motions. Plaintiffs have expended sizeable resources on

5    the litigation to date, and those expenses would only continue to mount if the litigation were to

6    continue. Berger Decl. ¶ 9.

7        Almost all class actions involve a high level of risk, expense, and complexity, which is

8    one reason that judicial policy strongly favors resolving class actions through settlement. *Linney*

9    *v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). This is a complex class proceeding

10    in a risky field of litigation. Indeed, earlier this month a heavily litigated data breach case that

11    began in 2019 was decertified on appeal—again—because of issues relating to the existence of

12    class action waivers. *Maldini v. Marriott Int'l, Inc.*, 2025 WL 1560372, at *1 (4th Cir. June 3,

13    2025). A significant portion of class members signed class action waivers with Sequoia.  Such

14    risks make settlement the more prudent course when a reasonable deal is on the table.

15        By settling now, practical remedies also become available to Class Members that will soon

16    disappear. What typical class members want most is not their share of a hypothetical eight-figure

17    judgment, but for their private information to remain confidential and secure. Reimbursements

18    for expenses incurred in response to the Data Security Incident, including updates to Sequoia's

19    data security practices, can help achieve that goal. Such security measures work to reduce the risk

20    of future breaches. Security measures are most effective the sooner they can be implemented.

21    Berger Decl. ¶ 10. This is a case, in other words, where delay hurts Class Members.

22        c.    **The Risk of Maintaining Class Action Status Through Trial**

23        None of the claims involved in this litigation have been certified yet. Only a handful of

24    data breach cases have achieved certification, and counsel is unaware of any data breach case

25    tried to verdict. It is uncertain whether Plaintiffs could certify the class, given the existence of

26    class waivers and the possibility that additional class members would be compelled to arbitration.

27    *Maldini*, 2025 WL 1560372, at *1. Moreover, defendants in class actions routinely challenge the

28

standing of absent class members, arguing that each class member must demonstrate Article III injury before certifying a class. *Davis v. Lab'y Corp. of Am. Holdings*, 2024 WL 489288, at *1. These challenges pose risks to Plaintiffs' ability to certify and maintain a class.

### d.    The Amount Offered in Settlement

In light of the risks and uncertainties presented by this litigation, the $8.7 million Settlement Fund achieved for the Settlement Class is impressive. This amounts to an average of almost $15 per class member—an amount that exceeds recent data breach settlements in this district, some by a significant margin.

- *In re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293, at *6 (N.D. Cal. Nov. 26, 2024) ($7,500,000 common fund settlement on behalf of two million victims of digital pharmacy data breach (equal to $3.75 per class member));

- *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *5 (N.D. Cal. Jan. 16, 2024) ($10,000,000 common fund settlement on behalf of 1.4 million victims of insurance data breach (equal to $7.14 per class member));

- *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020) ($117,500,000 common fund settlement on behalf of over 194 million victims of data breach (equal to $.61 per class member));

- *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03098-EMC, 2024 WL 4982986, at *5 (N.D. Cal. Dec. 4, 2024) (preliminary approval of $30,000,000 common fund settlement on behalf of 8 million victims of data breach (equal to $3.85 per class member));

- *In re: Orrick Herrington & Sutcliffe LLP Data Breach Litigation*, No. 3:23-cv-04089 (N.D. Cal.) ($8,000,000 non-reversionary common fund settlement on behalf of 637,620 victims of law firm data breach (equal to $12.55 per class member)).

These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have achieved good value for the class. The proposed Settlement will allow all Class Members to recover money for time spent responding to the Data Security Incident, as well as costs they have incurred that are fairly traceable to the Data

Security Incident. Class members who do not submit reimbursement or losses or time spent claims may request an alternative cash payment. Finally, the proposed settlement will also reduce the risk that the private information class members have entrusted to Sequoia—and continue to entrust to Sequoia—is compromised by future attacks. Berger Decl. ¶ 3h, Ex. H.

**e.    The Extent of the Discovery Completed and the State of Proceedings**

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Since Plaintiffs' counsel filed the consolidated class complaint in April 2023, they have litigated a motion to dismiss; served and responded to dozens of document requests and interrogatories; subpoenaed documents from four different third parties; and engaged in extended settlement discussions. They know the strengths and weaknesses of the claims, understand the business practice changes necessary to protect class members' data, and are well-equipped to negotiate a class settlement.

**f.    The Experience and Views of Counsel**

The Court appointed experienced and qualified counsel with substantial experience litigating complex class actions of all kinds, including data breach cases, to serve as Plaintiffs' Lead Counsel and Steering Committee. *See* ECF No. 46. Those attorneys have represented Plaintiffs and putative class members in that role since late 2022.

**g.    The Presence of a Government Participant**

No governmental agency is involved in this litigation.

**h.    The Reaction of Class Members to the Proposed Settlement**

The class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Before the Final Approval Hearing, the Court will receive and have a chance to review any objections or other comments received from class members, along with a full accounting of all opt-out requests.

**i.    Lack of Collusion Among the Parties**

When a proposed settlement is negotiated prior to class certification, the Ninth Circuit has

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

emphasized that "consideration of th[e] eight *Churchill* factors alone is not enough to survive appellate review," and that the district court should also scrutinize the settlement for subtle signs of collusion or conflicts of interest. *In re Bluetooth*, 654 F.3d at 946. Signs that the Ninth Circuit has said should guide the analysis are:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds;

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund;

*Id.* at 947 (internal quotation marks omitted). None of those warning signs are present here.

Plaintiffs' counsel will be paid from the same non-reversionary Settlement Fund as class members and so had every reason to negotiate the largest fund possible. Plaintiffs' fee request will constitute no more than 25% of the Settlement Fund, which is within the range of permissible percentage-based awards—particularly considering the value provided by the settlement's non-monetary relief. Of course, the Court will have ultimate discretion over how much of the Settlement Fund should go toward fees after reviewing counsel's lodestar data and considering all applicable factors. Finally, it bears mentioning that the Settlement was negotiated over the course of a full-day mediation session and subsequent settlement discussions over months with respected mediator Jill Sperber of Judicate West, and the final terms stemmed from her mediator's proposal. That is strong evidence that the parties' compromise was the product of arm's-length, non-collusive negotiations. *See Charalambous v. Liberty Mut. Ins. Co.*, 2024 WL 1586701, at *2 (N.D. Cal. Mar. 15, 2024) ("the presence of an experienced mediator evidences a non-collusive settlement").

### 2.  The Settlement is Likely to Merit Final Approval Under the Rule 23(e) Factors.

Under Rule 23(e)(2), the Court may approve the parties' settlement only upon finding that it is fair, reasonable, and adequate after considering four overarching questions:

(1) whether the class representatives and class counsel adequately represented the Class;

(2) whether the settlement was negotiated at arm's length;

(3) whether the amount of the settlement is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(4) whether the settlement treats class members equitably relative to each other.

A searching preliminary analysis of each of these factors indicates that, after class members are notified and given an opportunity to be heard, the Court is likely to be able to finally approve the Parties' Settlement as fair, reasonable, and adequate. Notably, many of these factors overlap with the *Churchill* factors addressed above.

### a.    Plaintiffs and class counsel have adequately represented the class.

Before evaluating the substantive terms of a classwide settlement, it is important to ensure that the parties who negotiated on behalf of the class were adequately informed and capable of intelligently representing the class's interests. *See* Fed. R. Civ. P. 23(e)(2)(A), Adv. Comm. Note to 2018 amendment. A settlement that is negotiated by counsel who have demonstrated the willingness and ability to litigate on the class's behalf is more likely to be fair and reasonable than a settlement that is reached quickly, without thoroughly investigating and testing the merits of the class claims being compromised. *See* 4 Newberg and Rubenstein on Class Actions § 13:14; *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). As discussed above, Plaintiffs and their counsel have represented the class since December 2022. Class Counsel have briefed motions, initiated discovery, and engaged in extensive settlement negotiations. Plaintiffs have responded to Sequoia's discovery requests and stayed abreast of case developments.

> **b.**    **The settlement was negotiated at arm's length.**

As discussed above, there is no evidence of collusion among the parties. *Supra* at B(1)(i).

> **c.**    **The settlement is more than adequate.**

As discussed above, Plaintiffs have secured a settlement that is in line with the value provided to class members in similar cases. *Supra* at B(1)(d). A claims process will ensure that Class Members who suffered greater injuries are compensated commensurately for their harms. Moreover, the Class Member data that Sequoia has may be stale or inaccurate such that remitting payment directly would increase the risk of omitting Class Members or fraudulent payments.

> **d.**    **The risk, delay, and other drawbacks associated with further litigation are substantial.**

As discussed above, the risk and delay associated with further litigation are serious— Sequoia has raised a large number of class certification issues, evidentiary issues, and legal issues that would pose at least some risk if the litigation continued. *Supra* at B(1)(a)–(c). One of the primary benefits of settling now is that the Class Members will receive a substantial portion of their potential recovery much sooner than they otherwise could.

> **e.**    **Class members will be notified of the settlement and the barrier to participation will be low.**

Class members will be notified of the settlement via email and by U.S. mail for those whom Sequoia does not have email addresses. S.A. ¶ 5.3.3. Plaintiffs have selected an experienced and cost-effective Settlement Administrator, after evaluating competing proposals from different administrators. Berger Decl. ¶ 16. Claimants will be able to submit a claim form for out-of-pocket losses (up to $7,500) including attested time (up to 4 hours at $30/hour) using a Claim Form. S.A. ¶ 2.2.1. Alternatively, claimants may submit a claim for Alternative Compensation of approximately $75 per person (with an additional estimated $150 to California Subclass Members), though the final will be subject to *pro rata* increase or decrease. *Id.* ¶ 2.2.2. No documentation is needed for attested time or alternative compensation. *Id.* The Settlement Administrator will also oversee a dispute resolution process for anyone who contests their claim

payment. *Id.* ¶ 2.5.

    **f.**  **Attorneys' fees will be limited to 25 percent of the Settlement Fund.**

  The terms and timing of any attorneys' fees provided for in a class settlement warrant scrutiny to ensure that class claims are not being compromised for the benefit of the class's attorneys rather than for the benefit of class members. Here, the settlement leaves Class Counsel's attorneys' fees to the Court's discretion. *Id.* ¶ 9.2. In addition, Class Counsel has agreed to limit their fee request to the well-established benchmark for an attorneys' fee award in a successful class action: 25% of the settlement fund generated by their efforts. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). As of this filing, Class Counsel have spent 1,928 hours on this case, for a total lodestar of $1,351,565.50. Berger Decl. ¶ 11. Should the court award the 25% benchmark, this would be a lodestar multiplier of 1.6, not including additional fees incurred before final approval. Berger Decl. ¶ 12. The total costs are $41,887.23. Berger Decl. ¶ 13.

    **g.**  **There are no side agreements.**

  Rule 23(e)(3) requires that parties seeking approval of a class settlement file a statement identifying any agreement made in connection with the proposal. Here, the only such agreement is the Settlement Agreement now before the Court; there are no side agreements. Berger Decl. ¶ 14.[3]

    **h.**  **The settlement and allocation plan treat class members equitably.**

  The settlement requires Class Counsel to propose a method for allocating proceeds among class members; that allocation plan will then be subject to Court approval. S.A. ¶ 1.14. Class Counsel has proposed that the net settlement fund be allocated to class members based on (1) how much money and/or time they have spent mitigating harm stemming from the breach, and (2) their request for Alternative Compensation. Court approval of this allocation plan is governed by the same standard as the settlement itself: the allocation plan must be "fair, reasonable, and adequate." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A plan

---

[3] For the reasons set forth above, though Sequoia's business practice commitments are part of the Settlement Agreement, Plaintiffs are filing them under seal.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018). Accordingly, an allocation formula like the one proposed by Class Counsel "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* at 332. Here, the proposed allocation plan meets the standard for Court approval. It treats Class Members equitably with respect to one another by basing class members' share on the approximate harm they suffered and is consistent with what class members expect and consider fair.

**C.    The Court Should Approve the Proposed Notice Plan.**

**1.    The settlement provides for the best method of notice practicable under the circumstances.**

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B).

The parties have agreed on a notice plan that will provide Class Members with direct email notice or direct mail notice to the extent that such addresses are available. This is how Class Members were initially notified of the Data Security Incident. The notices will encourage Class Members to submit claims via an online portal or by mail. Plaintiffs request that the Court approve this method of notice as the best practicable.

**2.    The proposed form of notice adequately informs class members of the settlement and their right to object.**

When notifying class members of a settlement that could affect their rights, the form of the notice should present information about the settlement "neutrally, simply, and understandably," and should generally describe the terms of the settlement in "sufficient detail to

alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The mail and email notices that the parties propose sending to Class Members satisfy this standard. The design of the notice incorporates best practices developed through original research on comprehensibility and effectiveness of class action notices by the Impact Fund, a non-profit, nonpartisan organization with considerable expertise in class action litigation; other courts have approved and praised the format of its notices, too. Berger Decl. ¶ 15; *see, e.g.*, *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 19-MD-02913-WHO (N.D. Cal.); *Clancy v. Salvation Army*, No. 22 CV 1250 (N.D. Ill.); *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 2024 WL 4582295, at *5 (E.D. Cal. Oct. 25, 2024) ("To the parties' credit, those notices employ unusually clear and straightforward language to describe this case, the proposed settlement, the class members' options and the other information required by Rule 23(c)(B)(i).").

The email and short postcard notices will direct Class Members to the Settlement Website, where more information—including a detailed long-form notice, opt-out forms, and other case documents like the operative consolidated class action complaint and Settlement Agreement—will be made available. *See* S.A. ¶ 5.3.2. Class Members who wish to opt out will be able to download an Opt-Out form from the Settlement Website and submit via mail. S.A. ¶ 6.1. Given there are no related pending or parallel proceedings, Plaintiffs anticipate very few opt outs. Class Members will not be able to *submit* an Opt-Out form online because Plaintiffs are concerned that Class Members may inadvertently opt out and have no other recourse. Plaintiffs believe that this notice process is the most effective way to alert class members to the existence of the settlement and convey detailed information about the settlement approval process, and Plaintiffs therefore accordingly ask that the Court approve the proposed forms of notice.

### 3.    Notice of the settlement will be provided to appropriate federal and state officials.

Sequoia, through the class administrator, will provide notice of the proposed settlement to the U.S. Attorney General and appropriate regulatory officials across the U.S., as required by

the Class Action Fairness Act, 28 U.S.C. § 1715. Sequoia, through the class administrator, will provide these government officials with all required materials so that the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval. *See* Declaration of Paul Ferruzzi of Kroll Settlement Administration, LLC ("Kroll Decl.") ¶ 5, attached as Exhibit 2 to the Declaration of David M. Berger.

### 4.    Appointment of a Settlement Administrator

In connection with the Court's preliminary approval of the Settlement, the parties are also asking the Court to appoint Kroll to serve as Settlement Administrator. Plaintiffs solicited competing bids and proposals from six different administrators. Berger Decl. ¶ 16. Kroll has extensive experience serving as a Settlement Administrator in many large and complex class action lawsuits, including in other data breach lawsuits in which it handled similar duties with respect to assisting class members in resolving claims for out-of-pocket expenses. Kroll Decl. ¶ 2. Kroll follows best practices for handling Class Members' data, including standards related to data retention and document destruction; fully redundant environmental systems and redundant storage; regular audits; and documented plans for both incident and crisis response, including breach protocols and physical controls. *Id.* ¶ 21. The cost of notice and claims administration—not to exceed $479,000, which assumes all notices are mailed—is reasonable. *Id.* ¶ 19.

### 5.    Comparable Outcomes

Pursuant to this District's Procedural Guidance for Class Action Settlements, Plaintiffs provide detailed information for at least one comparable settlement class.

|  | *Harbour v. California Health & Wellness Plan,* No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) | *IN RE: SEQUOIA BENEFITS AND INSURANCE DATA BREACH LITIGATION* |
|---|---|---|
| **Claims Released** | Claims "related to or arising from the [breach]." | Claims "reasonably related to the operative facts alleged in or otherwise described" in the Complaint. |
| **Total Settlement Fund** | $10,000,000 | $8,700,000 |

| | | |
|---|---|---|
| **Total Class Members** | 1,400,125 | 584,109 |
| **Total Class Members to Whom Notice was Sent** | 1,387,210 | N/A |
| **Notice Method(s)** | Email; if email is unavailable, via first class mail | Email; if email is unavailable, via first class mail |
| **Number and Percentage of Claim Forms Submitted** | 31,551 Claim Forms, reflecting a claims rate of approximately 2.3 percent | N/A |
| **Average Recovery Per Class Member or Claimant** | Approximately $243 for California Claimants and $121 for all other Claimants. | Approximately $225 for California Claimants and $75 for all other Claimants. |
| **Amount Distributed to Cy Pres Recipients** | N/A | N/A |
| **Administrative Costs** | N/A | Not to Exceed $479,000 |
| **Attorneys' Fees and Costs** | $2,500,000 | $2,175,000 |
| **Total Exposure if Plaintiffs Had Prevailed on Every Claim** | N/A | N/A |

As explained above, Plaintiffs have also obtained injunctive and non-monetary relief in the form of business practice commitments that will mitigate the risk of future data breaches.

### D.    The Schedule for Final Approval

The next steps in the settlement approval process are to schedule a Final Approval Hearing, notify the class of the Settlement and hearing, allow Class Members an opportunity to file any objections or comments regarding the Settlement, and allow the Parties to conduct appropriate objector discovery, if necessary. *See, e.g.*, *In re MagSafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105, at *2 (N.D. Cal. Jan. 30, 2015) (objector depositions authorized to inquire into objectors' membership in the class and ability to post an appellate bond). Accordingly, Plaintiffs have provided an agreed-upon proposed schedule in their Motion for Preliminary Approval.

| Event | Date |
|---|---|
| Deadline to send Initial Mailed Notice and Initial Email Notice | _____ (within 30 days after entry of Preliminary Approval Order) |

| Event | Date |
|---|---|
| Deadline for Class Counsel to File Motion for Attorneys' Fees and Costs | _____<br>(at least 35 days before the Objection Deadline) |
| Deadline for Class Members to Submit Claims | _____<br>(no later than 90 calendar days after the Notice Date) |
| Deadline to Opt-Out | _____<br>(no later than 60 calendar days after the Notice Date) |
| Deadline to Submit Objections | _____<br>(60 days after the Notice Date and at least 35 days after the Motion for Attorneys' Fees, Expenses, and Service Awards) |
| Deadline for Class Counsel to File Motion for Final Approval | _____<br>(no later than 14 days prior to the Final Approval Hearing) |
| Final Approval Hearing at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102 | _____ |

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the Parties' class settlement.

DATED: July 3, 2025                              **GIBBS MURA LLP**

*/s/ David M. Berger*
David M. Berger (277526)
Linda P. Lam (301461)
Mark H. Troutman (*pro hac vice*)
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
*dmb@classlawgroup.com*
*lpl@classlawgroup.com*
*mht@classlawgroup.com*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
No. 3:22-CV-08217-RFL

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
Rachele R. Byrd (190634)
Stephanie Aviles (350289)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
*byrd@whafh.com*
*saviles@whafh.com*

*Interim Class Counsel*

**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW CORP.**
M. Anderson Berry (262879)
Gregory Haroutunian (330263)
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

**TOUSLEY BRAIN STEPHENS PLLC**
Kaleigh N. Boyd (*pro hac vice*)
1200 Fifth Ave., Ste 1700
Seattle, WA 98101
Telephone: (206) 682-5600
*kboyd@tousley.com*

*Interim Class Counsel Executive Committee*